STATE of Alaska, Appellant,

v.

Darnell JONES, Appellee.

No. A–1949.

Court of Appeals of Alaska.

July 29, 1988.

---

Rene J. Gonzalez concluded that the performance rendered by Jones' trial counsel was constitutionally deficient; Judge Gonzalez entered an order setting aside Jones' conviction and granting a new trial. The state appeals, challenging the superior court's order on both procedural and substantive grounds. We reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The issues presented on appeal require us to set out a detailed statement of the factual and procedural background of Jones' case. The evidence at trial established that, on November 30, 1984, seventeen-year-old F.I. visited the Anchorage apartment of her sister, D.I. She planned to spend the night. That evening, F.I. watched as her sister played cards with some friends. D.I. and her friends were drinking alcohol, but F.I. was not. At around 8:00 p.m., Darnell Jones knocked on the door and asked D.I. if she knew where Jones' sister-in-law had moved. D.I. recognized Jones as someone she had seen before. D.I. invited him inside. Jones joined the others in D.I.'s apartment, playing cards and drinking with them.

Later in the evening, Jones drove D.I. and F.I. to visit their cousin and her boyfriend at their cousin's home. Jones and D.I. continued drinking at the cousin's home. After an hour, Jones, accompanied by D.I. and F.I., gave D.I.'s cousin and her boyfriend a ride downtown. Jones then drove D.I. and F.I. back to D.I.'s apartment. It was approximately 11:00 p.m. After letting F.I. off at the apartment, Jones gave D.I. a ride back to the downtown area and dropped her off at a bar. He did not accompany her inside.

F.I. stayed at home, put on a nightgown, and began watching television. At around 1:30 a.m., there was a knock at the door. F.I. opened it and found Jones. Jones entered the apartment. He closed and locked the door, approached F.I., and began kissing her on the lips and chest. F.I. told Jones to leave, but he ignored her.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

Larry Cohn, Asst. Public Advocate, and Brant McGee, Public Advocate, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Following a jury trial, Darnell Jones was convicted of one count of sexual assault in the first degree. Jones filed an application for post-conviction relief, alleging ineffective assistance on the part of his trial counsel. After a hearing, Superior Court Judge

A brief struggle ensued. Jones pushed F.I. to the floor and threatened to kill her. F.I. ceased struggling. Jones removed his clothing except his T-shirt and raped F.I. Shortly after ejaculating, Jones passed out on top of F.I. F.I. pushed him off and locked herself in the bedroom. Jones soon awakened. He forced open the bedroom door and asked F.I. why she was hiding. When F.I. replied that she was afraid, Jones went back into the living room, put on his shoes and socks, wrapped himself in a blanket, and walked out of the apartment, leaving the rest of his clothing behind.

D.I. returned at around 3:00 a.m. F.I. told D.I. that Jones had raped her. D.I. called the police. F.I. was taken by the police to the hospital, where she was examined by Dr. Phillip Jones. The doctor found fresh bruises and abrasions on F.I.'s back, arms, and knee. There was a fresh tear in the area of F.I.'s vaginal opening; tests revealed the presence of recently deposited semen. Dr. Jones found no indication that F.I. was under the influence of intoxicating liquor. She was tearful and appeared to be frightened.

F.I. and D.I. returned home after the examination, arriving at about 6:00 a.m. At about 7:45 a.m., they were awakened by the sound of breaking glass and were confronted by Jones, who had broken through the living room window and entered the apartment. Still wrapped in a blanket and wearing only shoes, socks, and a T-shirt, Jones demanded the rest of his clothing. D.I. called the police, who arrived at the apartment while Jones was still there.

Jones told the police that he had initially gone to D.I.'s apartment to demonstrate a vacuum cleaner that he was selling. He said he ended up drinking beer and rum and playing cards with several people, including D.I. According to Jones, D.I. was drinking with him the entire time. F.I. was only drinking beer and "a little bit" of rum. Jones stated that he later drove D.I. and F.I. to the house of a person he assumed to be D.I.'s sister, where he and D.I. continued to drink beer. F.I. had only one beer. According to Jones, they then went to a

downtown bar for about an hour or an hour and a half, and afterwards returned to D.I.'s apartment. Jones claimed that he remembered sitting in D.I.'s apartment, talking; the next thing he recalled was waking up outside on the stairs in the back yard, with only a blanket on.

Jones reported that he knocked on D.I.'s door. When no one answered, he kicked in the window and entered the apartment in order to get his clothing. Jones denied that he could have raped F.I., stating that he was not that kind of person and that he had a wife.

Jones was charged by indictment with one count of sexual assault in the first degree. He was initially represented by an attorney from the Alaska Public Defender Agency who was already representing Jones on an unrelated sexual assault charge. After several months, however, Jones' initial attorney withdrew, and a second public defender took over Jones' case. Jones' new counsel successfully moved to dismiss the indictment, but Jones was reindicted. Jones' counsel also made tentative arrangements for a plea bargain that would have included dismissal of Jones' other charges. Jones refused to accept the negotiated disposition.

Jones was brought to trial before a jury on February 26, 1985. The state's case consisted primarily of testimony by D.I., F.I., Dr. Jones, and the police officers who were dispatched to D.I.'s house on the night of the offense. Apart from recalling F.I. to the witness stand for a brief series of questions on a peripheral matter, Jones' trial counsel presented no witnesses. Upon advice of his attorney, Jones did not testify in his own behalf. Through cross-examination of the state's witnesses and his own final argument, Jones' counsel attempted to establish that Jones had mistakenly construed F.I.'s passive resistance as consent. The jury convicted Jones of the crime charged.

Following his conviction, Jones secured the appointment of an attorney from the Office of Public Advocacy and filed a postconviction relief application claiming inef-

fective assistance of counsel.[1] Jones' application consisted of a brief motion, which alleged in a conclusory manner that Jones had received ineffective assistance of counsel at trial. A more detailed recitation of Jones' claim was given in an accompanying memorandum prepared by Jones' appellate counsel. In narrative form, the memorandum advanced several allegations to support the ineffective assistance of counsel claim, including: (1) that Jones' trial attorney failed to conduct a pretrial investigation or interview potential defense witnesses; (2) that his attorney neglected to impeach the trial testimony of D.I. and F.I. by cross-examining them or by examining other witnesses concerning prior inconsistent statements that D.I. and F.I. had given to the police; (3) that his attorney did not arrange for independent testing of physical evidence gathered by the state; and (4) that he failed to call Tanya Pruitt—Jones' fiancee—as a witness in Jones' behalf.

With reference to the adequacy of the pretrial investigation, the memorandum alleged that Jones' trial counsel had conducted virtually no pretrial investigation. Jones asserted that several potential witnesses who had been listed in the police reports might have been able to provide helpful testimony about the amount of alcohol F.I. had consumed or about F.I.'s conduct toward Jones during the course of the evening. Jones claimed that his trial counsel failed to contact any of these witnesses.

Concerning the claim that his counsel had failed to impeach F.I. and D.I., Jones pointed to significant inconsistencies between what F.I. and D.I. initially told the police and their eventual trial testimony. According to copies of police reports that Jones attached to his application, F.I. initially told the police that Jones was at the apartment early in the evening and then left. She said that at some later point she and her boyfriend drove D.I. downtown and dropped her off. F.I. reported that her boyfriend then drove her back to D.I.'s apartment and let her off. He watched as she entered the apartment but did not come

in himself. F.I. denied having sexual intercourse with her boyfriend that night. According to the police reports, D.I. also initially told the police that she had been driven downtown by F.I.'s boyfriend.

F.I. and D.I. were reinterviewed within two weeks of the assault and gave statements inconsistent with their initial interviews. Their account of events reflected the testimony they later gave at trial. Most significantly, both reported that Jones had spent most of the evening preceding the assault with them, and both failed to mention any contact between F.I. and her boyfriend on the evening of the assault. In addition to these unexplained inconsistencies, the police reports show that D.I. told the police that F.I. was drinking with her and Jones on the evening of the assault. At trial, both D.I. and F.I. denied that F.I. had consumed any alcohol.

With regard to the failure to obtain independent testing, Jones' memorandum briefly alleged that trial counsel did not examine or independently test any of the physical evidence collected by the state. Jones claimed that the evidence might have been exculpatory, given F.I.'s initial statement to the police that she was with her boyfriend before the assault.

In connection with trial counsel's failure to call Tanya Pruitt as a witness, Jones' memorandum asserted that Pruitt would have testified that she went to D.I.'s apartment on the day after the alleged assault. She noticed Jones' car outside the building and saw that it had been vandalized. Upon entering the apartment, Pruitt recognized many of Jones' articles inside. She met with F.I. and observed no scratches or bruises. When Pruitt asked how F.I. could claim she had been raped when she was not scratched or bruised, F.I. reportedly replied that it was none of Pruitt's business. Jones alleged that he told his trial counsel about Pruitt and claimed that his counsel was incompetent in failing to call her as a witness.

In response to Jones' application, the state filed an opposition arguing that the

---

1. Jones also filed a direct appeal challenging his conviction and sentence on unrelated grounds. The appeal was stayed pending resolution of the post-conviction relief proceeding.

application was procedurally deficient and failed to state a *prima facie* claim. The state challenged the application primarily for failing to include affidavits from Jones' trial counsel and from the various potential witnesses who purportedly would have provided exculpatory evidence or who might have been impeached through further cross-examination. Jones filed a reply to the state's opposition, arguing that he was not obligated to conduct an investigation or to submit affidavits from his trial attorney and other potential defense witnesses. In Jones' view, his trial counsel's total failure to conduct a pretrial investigation and to cross-examine on prior inconsistent statements supported the conclusion that his trial counsel had rendered ineffective assistance. To bolster this view, Jones submitted affidavits from two Anchorage attorneys who stated that pretrial investigation and impeachment of the victim's credibility were crucial in any sexual assault case where consent was at issue.

Jones' post-conviction relief application was assigned to Judge Gonzalez, who had presided over Jones' trial. Judge Gonzalez did not rule on the state's request for dismissal of Jones' case. Instead, the judge scheduled an evidentiary hearing.

Jones was the only witness to testify at the hearing. His account of events differed to some extent from the statement he gave to the police at the time of his arrest. As in his original statement, Jones' indicated that he initially visited with D.I. and F.I. at D.I.'s apartment, that he later drove D.I. and F.I. to the home of D.I.'s cousin, and that he eventually went downtown with them. In contrast to his earlier statement, however, Jones testified that, on the way downtown, they stopped briefly at the home of F.I.'s boyfriend. After they had been downtown for about an hour, they returned to D.I.'s apartment so that D.I. could change clothes. He then drove D.I. back downtown, while F.I. stayed at the apartment. Jones testified that he and D.I. later returned to D.I.'s apartment and that he recalled nothing from that point until he awoke outside D.I.'s apartment building. He claimed to have told his trial counsel this version of events. Jones stated that

his trial counsel had advised him not to testify, because he could be impeached with his prior convictions.

Following Jones' testimony, the state argued, as it had in its written opposition, that Jones still had not made out a *prima facie* case of ineffective assistance of counsel. The state insisted that, at a minimum, it was incumbent on Jones to call his attorney to establish the circumstances surrounding any alleged incompetence. The state also expressed the view that Jones had failed to meet his burden of showing prejudice.

After hearing argument from counsel, Judge Gonzalez stated that he would order Jones' trial counsel to submit an affidavit addressing the issues Jones had raised in his application. The judge indicated that he would take the case under advisement and notify the parties if further evidentiary hearings were necessary.

At the court's request, Jones' trial counsel submitted an affidavit addressing the issues raised in Jones' application for post-conviction relief. The affidavit stated that it had been difficult for Jones' trial counsel to decide on the specifics of a defense, because Jones had no recollection of the alleged assault. According to the affidavit, Jones had been uncooperative with his counsel and had accused him of collusion for negotiating a plea bargain with the prosecution. The affidavit further mentioned that, at one point, counsel discussed the possibility of a continuance with Jones to allow more time to prepare for trial. Jones was adamant in his opposition to any further delay, however, so his counsel did not seek postponement. The affidavit gave little indication as to the actual nature and extent of Jones' counsel's preparation for trial.

Jones' counsel confirmed in his affidavit that no pretrial investigation had been conducted. Counsel acknowledged that an investigation should have been done but did not say whether he had been asked by Jones to interview any prospective witnesses or whether Jones had told him that F.I. visited her boyfriend on the evening of the

assault. The affidavit gave no explanation for counsel's failure to conduct any witness interviews. It was also silent on the issue of the prior inconsistent statements, giving no indication why Jones' counsel did not try to impeach the testimony of F.I. or D.I.

No further evidentiary proceedings were conducted in Jones' case. Instead, Judge Gonzalez issued a written order setting aside Jones' conviction and granting a new trial. The judge found that the representation given to Jones was deficient in three primary respects: that Jones' trial counsel failed to conduct an investigation or interview witnesses who might have testified to F.I.'s consumption of alcohol and to her contacts with Jones during the evening immediately preceding the assault, that counsel failed to impeach F.I. or D.I. with prior inconsistent statements, and that counsel placed himself in the position of proceeding to trial without adequate preparation. Judge Gonzalez concluded that the lack of competency contributed to Jones' conviction.

## PROCEDURAL ISSUES

On appeal, the state challenges the superior court's ruling on both procedural and substantive grounds. We will consider the procedural issues first.

In *Barry v. State,* 675 P.2d 1292 (Alaska App.1984), we observed that in appeals raising the issue of ineffective assistance of counsel, the trial record will seldom conclusively establish incompetent representation, because it will rarely provide an explanation for the course of conduct that is challenged as deficient. We concluded that, "henceforth we will not entertain claims of ineffective assistance of counsel on appeal unless the defendant has first moved for a new trial or sought post-conviction relief...." *Id.* at 1296.

Applications for post-conviction relief are governed by Alaska Criminal Rule 35.1.[2] The rule contemplates three distinct phases

in the adjudication of a post-conviction relief action. The first phase commences with the filing of the application. Alaska R.Crim.P. 35.1(d). When the application, together with its supporting documentation, sets out a *prima facie* case for relief, the state is called upon to respond on the merits within thirty days. The response may be analogized to the answer in a civil case. *See* Alaska R.Civ.P. 12(a). Both the application and the response must be supported by relevant affidavits, documents, and references to the trial record. Alaska R.Crim.P. 35.1(f)(1).

When an application for post-conviction relief appears to be deficient on its face, the state, in lieu of responding to its merits, may file a motion to dismiss—the equivalent of a Civil Rule 12(c) motion for judgment on the pleadings. *See* Alaska R.Crim.P. 35.1(f)(1). When a motion to dismiss is filed, the trial court must determine the adequacy of the application on its face. If the court preliminarily concludes that a *prima facie* case for relief has not been stated, it must issue a notice of intent to dismiss and allow the applicant sufficient time to respond or to amend or supplement the original application. *See* Alaska R.Crim.P. 35.1(f)(2); *Wood v. Endell,* 702 P.2d 248, 249–50 (Alaska App.1985); *Hampton v. Huston,* 653 P.2d 1058, 1060 (Alaska App.1982). If the applicant fails to correct the deficiencies in the original pleading, the court may then dismiss the action. Conversely, if the application—either in its original form or as augmented following notice of intent to dismiss—sets out facts which, if true, would entitle the applicant to the relief claimed, then the court must order the case to proceed and call upon the state to respond on the merits. Alaska R.Crim.P. 35.1(f)(2).

The filing of a response on the merits by the state commences the second phase of the post-conviction relief proceeding. This stage is designed to provide "an orderly procedure for the expeditious dispo-

---

2. At the time Jones filed his application, the procedures governing post-conviction relief actions were set out in Alaska Criminal Rule 35(c)–(j). These provisions were subsequently renumbered as Criminal Rule 35.1. Because

Rule 35.1 is identical in substance to the provisions of former rule 35(c)–(j), the discussion in this opinion addresses the current form of the rule."

sition of non-meritorious applications ... without the necessity of holding a full evidentiary hearing." *Fajeriak v. State*, 520 P.2d 795, 798 (Alaska 1974) (footnote omitted). The rule does so by allowing the parties an opportunity to ascertain whether any genuine issues of material fact actually exist. To this end, Criminal Rule 35.1(f)(3) and (g) place the full range of discovery mechanisms at the disposal of the parties. At any time during this phase, either party may move for summary disposition—a motion in substance identical to a Civil Rule 56 motion for summary judgment. Summary disposition may be granted when no genuine issues of material fact are in dispute and when, under the undisputed facts, the moving party is entitled to judgment as a matter of law. *See Fajeriak*, 520 P.2d at 798; *Donnelly v. State*, 516 P.2d 396, 398–99 (Alaska 1973). *See also Barry*, 675 P.2d at 1296.

■ The final phase of a post-conviction relief proceeding is the evidentiary hearing, as provided for under Criminal Rule 35.1(g). A hearing is required when, upon completion of the discovery and summary disposition phase, genuine issues of material fact remain to be resolved. *See Fajeriak*, 520 P.2d at 798. If the disputed issues involve facts within the personal knowledge of the applicant, the applicant's presence is required; otherwise, the applicant need not appear. *Id.* at 803. *See also* IV *Standards for Criminal Justice* § 22–4.6 (Approved Draft 1978). At the conclusion of the hearing, the court is required to enter findings of fact and conclusions of law disposing of all issues raised; the court's order operates as a final judgment. Criminal Rule 35.1(g). *See also* IV *Standards for Criminal Justice* § 22–4.7.

There is, of course, a need for flexibility in implementing and administering the procedural requirements of Criminal Rule 35.1. In many cases, little reason for elaborate discovery proceedings may exist. In some situations, the most efficient and desirable means of resolving a claim may be to hold an evidentiary hearing relatively early on, with little attendant formality. Nevertheless, a clear understanding of the procedures established by Rule 35.1 is imperative as a starting point for the court and the parties. The orderly process contemplated by the rule has been established to ensure that both parties receive fair treatment in the adjudication of the issues at hand. Unless agreed upon by the parties or signalled by clear prior notice from the court, any significant departure from the procedures described in the rule carries with it a risk of violating the parties' fundamental right to procedural fairness.

■ Jones' application fell short of complying with the requirements of Rule 35.1 in several respects. The memorandum in support of Jones' application generally alleged ineffective assistance of counsel and included a narrative description that was critical of various aspects of the representation afforded by Jones' trial counsel. Although the main points of Jones' dissatisfaction could readily be discerned, his memorandum left room for considerable uncertainty as to particulars. At no point did the memorandum "specifically set forth the grounds upon which the application is based[.]" Alaska R.Crim.P. 35.1(d)(4).

The memorandum also failed to separately state facts within Jones' personal knowledge, as required under Rule 35.1(d). Although many of the facts in the memorandum appeared to be within Jones' personal knowledge, they were not stated under oath. *See id.* A cursory affidavit signed by Jones did accompany the application, but it did not generally attest to the truth of the facts contained in the memorandum.

The police reports and an affidavit from Tanya Pruitt were the only other documents filed by Jones to provide factual support for his claims. Jones did not submit an affidavit from his trial counsel or any other affidavits, records, or evidence to substantiate his ineffective assistance of counsel claims. Nor did Jones recite why such additional evidence was not attached. *See id.* Finally, Jones' memorandum failed to include any supporting references to the trial record. In Jones' view, such references were unnecessary, because the trial judge was familiar with the case. A contrary view was adopted in *Fajeriak*, 520

P.2d at 806, however; there the court specifically concluded that "[t]he portions of the record relied on in the post-conviction proceeding must be specifically indicated to the trial judge."

 These deficiencies were all called to the attention of the superior court in the state's response to Jones' application, but the court did not address them. The trial court undeniably has broad discretion to relax the technical rules governing the form of pleadings in a post-conviction relief action. Criminal Rule 35.1(f)(1) specifically admonishes: "In considering the application the court shall consider substance and disregard defects of form." Particularly in cases involving *pro se* applicants who are incarcerated and do not have ready access to court documents, the court's discretion to relax technical pleading requirements should be liberally exercised. However, in the present case, Jones was represented by counsel, who prepared and filed Jones' application, presumably with full access to all trial court records and other pertinent materials. The trial court appears simply to have disregarded the procedural issues raised by the state. In so doing, it committed error.

 A second set of procedural concerns arises from the events that transpired after the filing of the state's opposition. The state's opposition challenged only the adequacy of Jones' application on its face and did not purport to be a substantive response setting out facts to controvert Jones' factual allegations on their merits. Instead of ruling on the state's request for dismissal, the superior court ordered an evidentiary hearing. The court's order overlooked the need to pass upon the facial sufficiency of Jones' application and the need to allow the state to file a formal response on the merits in the event the application was found sufficient to allow the action to proceed. The scheduling of an immediate hearing completely bypassed the second, and most crucial, stage of the post-conviction relief process—the stage at which both parties may make use of the discovery process and may determine whether any genuine issues of material fact are in dispute.

At the evidentiary hearing, the state, with good reason, expressed considerable confusion as to the procedural posture of the case. The parties disagreed as to whose burden it was to call Jones' trial counsel as a witness. Rather than resolve this dispute by allocating the burden to one of the parties, the superior court, *sua sponte*, directed trial counsel to file an affidavit addressing the issues raised in the application. Without further notice to the parties, the court proceeded to resolve the case based on that affidavit. Neither party examined Jones' trial counsel, and neither party had the opportunity to respond to the information he provided in his affidavit.

In short, the *ad hoc* procedural course followed by the trial court departed markedly from the "orderly procedure for the expeditious disposition of non-meritorious applications for post-conviction relief ..." contemplated by Criminal Rule 35.1. *Fajeriak*, 520 P.2d at 798. We conclude that this departure worked to deprive the state of a fair opportunity to contest Jones' application.

### SUBSTANTIVE ISSUES

We turn next to the substantive issues presented in this case. The seminal case for ineffective assistance of counsel in Alaska is *Risher v. State*, 523 P.2d 421 (Alaska 1974), which adopted a two-pronged standard for evaluating ineffective assistance of counsel claims. The first prong requires the accused to prove that the performance of trial counsel fell below an objective standard:

> Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

*Id.* at 424 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir.1974)). *Risher*'s second prong requires a showing of prejudice:

> Secondly, there must be a showing that the lack of competency contributed to the

conviction. If the first burden [the burden of proving deficient performance] has been met, all that is required additionally is to create a reasonable doubt that the incompetence contributed to the outcome.

*Id.* at 425 (footnote omitted).

The United States Supreme Court adopted a similar two-pronged standard for ineffective assistance of counsel claims in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). With respect to the first, or "performance," prong of this standard, the *Strickland* Court held:

When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.

*Id.* at 687–88, 104 S.Ct. at 2064–65. As to the "prejudice" prong, the *Strickland* Court held that:

[T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution, and in the test for materiality of testimony made unavailable to the defense by government deportation of a witness. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694, 104 S.Ct. at 2068 (citations omitted).

 Under *Risher* and *Strickland* alike, the standard for ineffective representation is one of minimal competence. *See Coleman v. State,* 621 P.2d 869, 879 (Alaska 1980). "There are countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Representation is constitutionally deficient only when it falls "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. Thus, in order to prove ineffective assistance of counsel, the accused must establish

a level of performance that no reasonably competent attorney would provide. *Brown v. State,* 601 P.2d 221, 234 (Alaska 1979). As the court in *Risher* stated:

Lawyers may display a wide spectrum of ability and still have their performance fall within the range of competence displayed by one of ordinary training and skill in the criminal law. It is only when the ability is below the nadir of that range that we would hold it to constitute a deprivation of effective assistance of counsel.

*Risher,* 523 P.2d at 424.

Applying the *Risher* standard to the circumstances of the present case, we conclude that the trial court erred in finding that Jones met his burden of proving ineffective assistance of counsel. On the current record, neither the performance prong nor the prejudice prong of the standard has been satisfied. We consider the performance prong first.

In his pleadings and argument before the superior court, Jones maintained that his counsel's failure to conduct a pretrial investigation, to cross-examine witnesses in all potential areas, to call a specific witness, and to conduct independent testing of physical evidence were all omissions that could be judged *per se* ineffective. Because the constitutional guarantee of effective assistance of counsel assures only minimal competence, however, it does not require error-free representation. There are some mistakes that no competent counsel would make. But all reasonably competent counsel can and do make mistakes. While the former class of mistake may jeopardize an accused's right to effective assistance, the latter normally will not. Even mistakes as to constitutional issues may in many instances not amount to constitutionally deficient performance:

We have long recognized ... that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.

*Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (quoting

*Engle v. Isaac,* 456 U.S. 107, 133–34, 102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783 (1982)).

 Because the constitution does not guarantee error-free representation, rarely can a specific act or omission be judged *per se* incompetent. *See, e.g., United States v. Cronic,* 466 U.S. 648, 658–62, 104 S.Ct. 2039, 2046–49, 80 L.Ed.2d 657 (1984); *Wood v. Superior Court,* 690 P.2d 1225, 1231 (Alaska 1984); *Barry v. State,* 675 P.2d at 1295. Rather, courts have evaluated attorney errors against the background of the trial as a whole:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.

*Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

 An informed decision on the issue of competence can be made only with full knowledge of the reasoning and information upon which counsel chose to act. In evaluating trial counsel's conduct, the court must apply a strong presumption of competence. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. *See also Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046. An integral component of the presumption of competence is the further presumption that trial counsel's actions were motivated by sound tactical considerations. The duty of rebutting this presumption is part and parcel of the accused's burden of proof: "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted). In the absence of evidence ruling out the possibility of a tactical reason to explain counsel's conduct, the presumption of competence remains unrebutted and operates to preclude a finding of ineffective assistance.

 No special rule governs cases where it is claimed that trial counsel has failed to conduct an adequate pretrial investigation. The presumption of competence applies to such cases, as it does in other situations. Ideally, a thorough pretrial investigation should be conducted by the defense in all criminal cases. *See* IV *Standards for Criminal Justice* § 4–4.1 (Approved Draft 1978); *Jackson v. State,* 750 P.2d 821, 827 (Alaska App.1988). Nevertheless, a full investigation is not a prerequisite of constitutionally effective representation in all cases:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
>
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.... [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066 (citations omitted).

 In this connection, if it appears that counsel's actions were undertaken for tactical or strategic reasons, they will be virtually immune from subsequent challenge, even if, in hindsight, the tactic or strategy appears to have been mistaken or unproductive. *Id.; Jackson,* 750 P.2d at 827. Of course, a mistake made out of ignorance rather than from strategy cannot later be validated as being tactically defensible. *See Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 2588–89, 91 L.Ed.2d 305 (1986); *Arnold v. State,* 685 P.2d 1261, 1265–67 (Alaska App.1984). On the other hand, when a tactical choice has in fact been made, even if it was made by an attorney who was not fully informed as to available options, the choice will be subject to challenge only if the tactic itself is

shown to be unreasonable—that is, a tactic that no reasonably competent attorney would have adopted under the circumstances. *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986); *Baldwin v. Maggio,* 704 F.2d 1325, 1334 (5th Cir.1983); *People v. Pope,* 23 Cal.3d 412, 152 Cal.Rptr. 732, 590 P.2d 859 (1979).

When, as in the present case, an application for post-conviction relief alleges potential mistakes or oversights on the part of trial counsel but does not go on to allege facts ruling out the possibility of sound tactical choice, it fails to set out a *prima facie* case. The facts alleged in Jones' application, if true, would not justify a finding that his counsel rendered constitutionally deficient performance. Unless and until a post-conviction relief application is sufficient, on its face, to set out a *prima facie* case of ineffective assistance of counsel, the burden of justifying trial counsel's conduct does not shift to the state. The strong presumption of competence remains in effect.

Jones' most notable omission in the present case was his failure to include an affidavit from his trial counsel. It will seldom be possible to decide whether an attorney made a sound tactical choice without knowing what motivated counsel's actions. *See Strickland,* 466 U.S. at 689–91, 104 S.Ct. at 2065–66. Thus, in order to establish a *prima facie* case of ineffective assistance of counsel, it will ordinarily be necessary for the accused to submit an affidavit of trial counsel addressing this issue. This requirement should not be enforced inflexibly. In some cases, the accused may personally be aware of specific facts ruling out the possibility of sound tactical choice, or there may be other evidence available to rule out that possibility.[3] In other cases, trial counsel may be uncoop-

erative; the accused should then be allowed to allege on information and belief the absence of sound tactical choice, explaining why an affidavit of counsel cannot be filed and requesting an opportunity to compel counsel's testimony at a formal deposition.

We have repeatedly rejected ineffective assistance of counsel claims where, as here, the record failed to contain allegations or proof to refute the possibility that the challenged conduct of trial counsel resulted from sound tactical choice. *See, e.g., Jackson,* 750 P.2d at 827; *Strehl v. State,* 722 P.2d 226, 227–28 (Alaska App. 1986); *Barry v. State,* 675 P.2d at 1295; *Bangs v. State,* 663 P.2d 981, 985–86 (Alaska App.1983); *Liston v. State,* 658 P.2d 1346, 1350 (Alaska App.1983). *See also Dolchok v. State,* 639 P.2d 277, 294–95 (Alaska 1982); *Brown v. State,* 601 P.2d at 233–34; *McCracken v. State,* 521 P.2d 499, 510 (Alaska 1974).

Here, although Jones did not file an affidavit from his trial counsel, the trial court did ultimately direct counsel to submit an affidavit addressing the issues raised in Jones' application. Even when the views expressed by Jones' trial counsel are considered, however, there is inadequate evidence to support the conclusion that counsel's performance was deficient. Jones' claim that his trial counsel was remiss in failing to call Tanya Pruitt as a witness may be rejected out of hand. On the face of the application, it is apparent that Pruitt's testimony would have been of no material value to the defense. Nothing in the affidavit submitted by Jones' trial counsel supports a different conclusion. The trial court did not rely on this point in finding ineffective assistance.

With respect to the failure to investigate claim, the affidavit of Jones' trial

---

3. In the present case, Jones did submit, in his reply to the state's opposition, two affidavits of experienced criminal trial practitioners generally attesting to the importance of pretrial investigation and impeachment of the victim in a rape case where consent is an issue. These affidavits did not, however, purport to be based on a full knowledge of the circumstances in which Jones'

trial counsel acted, nor did they express the view that no competent counsel in the position of Jones' trial counsel could have elected to forego a thorough investigation or to refrain from conducting more extensive cross-examination. They could therefore not suffice to overcome the presumption of competence.

counsel fails to rule out the existence of a sound tactical choice. Although counsel candidly acknowledged that more investigation should have been done, his affidavit contains no specific information to support a finding that the failure to investigate was incompetent and much to suggest that it was not.[4] The affidavit gives little insight into the specific nature and extent of counsel's preparation for trial; it is nonetheless apparent from the affidavit that counsel devoted a significant amount of time and attention to the case. The affidavit also makes it clear that Jones was adamant in his opposition to delaying the trial to allow further preparation, and it establishes that Jones refused to provide his attorney with any meaningful assistance in formulating a defense.

This information must be considered in light of the evidence disclosed in the record. There is nothing in the record to indicate that, prior to trial, Jones' trial counsel had any reason to expect that a more thorough investigation would yield materially exculpatory evidence, given the defense he elected to pursue: that Jones mistakenly believed F.I. had consented to sexual intercourse. Jones claims that, had witnesses been interviewed, they might have provided evidence that F.I. was intoxicated or that she acted in a friendly manner towards Jones during the evening preceding the assault. Yet even in his own pretrial statement to the police, Jones did not claim that F.I. appeared to be intoxicat-

ed; to the contrary, his statement specifically indicated that she had consumed relatively little alcohol. Moreover, Jones' trial counsel was presumably aware that F.I. had been examined by a physician shortly after she reported the alleged assault, and that the physician detected no signs of intoxication.

As to the possibility of witnesses attesting to a friendly relationship between Jones and F.I., we note that F.I. was a seventeen-year-old young woman who had met Jones for the first time that evening. Again, Jones' own statement to the police included no claim of social interaction between Jones and F.I. during the evening before the assault. By Jones' own account, he was primarily occupied with F.I.'s sister, D.I., and had little to do with F.I.[5]

Viewing these circumstances in conjunction with the facts related in the affidavit of trial counsel, our firm impression is that, far from negating the presumption of competence, the affidavit strongly suggests that counsel's election to proceed to trial without further investigation may have been, under all attendant circumstances, a sound tactical choice. To the extent that Jones' own lack of cooperation exacerbated his trial counsel's problem, Jones certainly cannot assert it as a basis for his claim of ineffective assistance of counsel. *See Coleman*, 621 P.2d at 880–81. Nor can counsel, who was faced with a client adamantly opposed to further delay, be faulted

---

**4.** A similar situation was presented in *Dolchok v. State*, 639 P.2d 277 (Alaska 1982), where trial counsel, in a post-conviction hearing, expressed the view that he had been remiss in the advice he gave his client at trial. In rejecting Dolchok's claim of ineffective assistance of counsel, the supreme court gave little weight to trial counsel's after-the-fact assessment of his own performance:

> [D]efense counsel's evaluation of his own performance is more a reflection of his dedication to his representation of clients, and remorse at the disappointing result obtained in this case, than it is an objective assessment of his work in representing Dolchok.

*Id.* at 295.

**5.** It might also be possible to speculate that an interview with F.I.'s boyfriend would have disclosed exculpatory evidence. With respect to this possibility, it must be noted that, in the

statement Jones gave to the police at the time of his arrest, he disclaimed any knowledge as to whether F.I. had a boyfriend. In the narrative statement of facts accompanying his post-conviction relief application, Jones did not claim that F.I. had visited with her boyfriend on the evening of the assault. Jones raised this claim for the first time in his testimony at the evidentiary hearing. Although Jones claimed that he had informed his trial counsel of the contact between F.I. and her boyfriend, the affidavit submitted by Jones' trial counsel contains nothing to support this claim. At any rate, the utility of establishing that F.I. visited with her boyfriend on the night of the assault is questionable, at best, because this fact would have little bearing on Jones' defense. Jones did not contest F.I.'s claim of sexual intercourse, but sought instead to establish that he mistakenly believed that F.I. had consented.

for failing to pursue options which, at the time, appeared to hold little promise of success. *See Larson v. State*, 614 P.2d 776, 780–81 (Alaska 1980). As observed by the court in *United States v. DeCoster*, 624 F.2d 196, 211 (D.C.Cir.1976) (en banc) (footnote omitted):

If given an unrestricted budget and freed of any constraints as to probable materiality or accountability, a lawyer might have cheerfully logged in many hours looking for the legal equivalent of a needle in a haystack. As already noted, a millionaire might have retained counsel to leave not a single stone unturned. However, a defendant is not entitled to perfection but to basic fairness. In the real word, expenditure of time and effort is dependent on a reasonable indication of materiality.

With regard to Jones' claim that his counsel was deficient in failing to cross-examine F.I. and D.I. and in failing to independently test physical evidence that was in the possession of the state, the affidavit submitted by his trial counsel added nothing of substance. It did not address these issues and does little either to rule out or to establish the possibility of tactical choice. Although Jones' application, through the attached police reports, did establish that both F.I. and D.I. apparently made inconsistent statements that might have afforded a good basis for impeachment, there was no indication that counsel was unaware of this potential line of inquiry or that he did not have sound reasons for electing not to pursue it.[6]

We conclude that the trial court erred in finding that Jones satisfied the performance prong of the *Risher* standard.

The prejudice prong of the ineffective assistance of counsel standard remains to be considered. This court has previously noted that, while *Strickland*'s performance prong is similar to *Risher*'s, its prejudice prong places a significantly greater demand on the accused than does *Risher*'s. *See Jackson*, 750 P.2d at 824; *Wilson v. State*, 711 P.2d 547, 549 (Alaska App.1985). Whereas *Risher* requires only that the accused create a reasonable doubt that counsel's incompetence contributed to the conviction, *Strickland* requires that a "reasonable probability" of a different outcome be established. 466 U.S. at 694, 104 S.Ct. at 2068.

Although *Risher*'s prejudice prong is significantly less demanding than *Strickland*'s, the state and federal standards are nevertheless similar in one important feature: both impose upon the accused the affirmative burden of proving prejudice. "In order to establish ineffective representation, the defendant must prove both incompetence and prejudice." *Kimmelman v. Morrison*, 106 S.Ct. at 2586 (footnote omitted).

In *Wilson*, 711 P.2d at 549, this court likened *Risher*'s prejudice prong to the test for determining harmless error on constitutional issues. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705 (1967). Insofar as the *Risher* and *Chapman* standards both turn the reversal of a conviction upon the existence of a reasonable doubt as to the outcome of trial, the analogy in *Wilson* is apt; beyond that, however, it is potentially misleading, for it masks a crucial distinction. When error of constitutional dimension has been shown, the *Chapman* standard requires the state to prove that it was harmless beyond a reasonable doubt. In contrast, *Risher* assigns the burden of proof to the accused, who must create a reasonable doubt that counsel's incompetence actually affected the verdict. Under *Chapman*, if the impact of a constitutional error cannot be ascertained with reasonable certainty, the state, having failed to meet its burden,

---

**6.** We note that the actual decision of the trial court finding ineffective assistance of counsel was premised to a large extent on the court's conclusion that counsel was not adequately prepared for trial. The court based this conclusion on counsel's statement that prior to trial he considered seeking a continuance but decided against it because Jones objected. The fact that counsel suggested a continuance to Jones does not support the conclusion that he was not minimally prepared. There is a vast difference between an ideal level of trial preparation and a level that is adequate to assure competent representation. Nothing in counsel's affidavit establishes that he was not minimally prepared, and Jones has never specifically made such a claim.

cannot prevail; under *Risher*, if the impact of an attorney's incompetence has not been proved, it is the accused who has failed to meet the requisite burden and who must bear the consequences of the failure of proof.[7]

■ Because *Risher* and *Strickland* alike require the accused to prove both incompetence and actual prejudice, it follows that a mere conclusory or speculative allegation of harm will not suffice. The accused must do more than present "abstractions without context." *United States v. DeCoster*, 624 F.2d at 211. Once the performance prong of the *Risher* standard has been established, the accused must, in addition, make a specific factual showing that counsel's incompetence had some actual, adverse impact on the case— that is, the accused must prove "some effect of [the] challenged conduct on the reliability of the trial process[.]" *Resek v. State*, 715 P.2d 1188, 1191 (Alaska App. 1986) (quoting *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984)).

In some situations, of course, the negative effect of an attorney's incompetence may be obvious from the context in which the incompetence occurs. Proof of the incompetence will then invariably provide an informed basis for resolution of *Risher*'s prejudice prong.

■ In many other situations, however, the effect of an attorney's incompetence may be anything but self-evident. In those cases, it is incumbent upon the accused, having established incompetence, to adduce further evidence to establish what its actual effect was, or what would have happened had the incompetence not occurred. Once the accused demonstrates that trial counsel's incompetence actually had an adverse effect on the case, the court, under *Risher*, need only find a reasonable doubt that the incompetence contributed to the conviction.

■ When, on the other hand, the accused fails to allege or show that counsel's incompetence resulted in any actual adverse impact and relies instead on the fleshless allegation that prejudice in some imaginable but unsubstantiated form was reasonably possible, the burden of proving prejudice is not satisfied. In such instances, the decisions of the Alaska Supreme Court and our court alike have not hesitated to deny relief. *See Morgan v. State*, 582 P.2d 1017, 1021–23 (Alaska 1978); *Winkler v. State*, 580 P.2d 1167, 1172–73 (Alaska 1978); *Green v. State*, 579 P.2d 14, 15–16 (Alaska 1978); *Resek*, 715 P.2d at 1191–92; *Figueroa*, 689 P.2d at 513–14; *Patterson v. State*, 689 P.2d 146, 147–49 (Alaska App.1984); *Springer v. State*, 666 P.2d 431, 435–37 (Alaska App.1983).

In the present case, the specific claims of incompetence raised by Jones relate to various omissions by trial counsel. The negative impact of an attorney's omissions will seldom be evident from the trial record alone. Whether the incompetence alleged by Jones had any actual effect on his case cannot be known unless evidence is produced to show that independent testing would likely have yielded exculpatory evidence,

---

**7.** The Alaska Supreme Court has consistently construed *Risher* to place an affirmative burden on the accused to prove prejudice in addition to incompetence. *See, e.g., Coleman v. State*, 621 P.2d 869, 879 (Alaska 1980) ("Once a lack of competency is shown, the defendant has the further burden of creating a 'reasonable doubt' to the effect that the incompetence contributed to the outcome."); *Larson v. State*, 614 P.2d 776, 780 (Alaska 1980) ("Larson must first show that his lawyer's skill in these two instances fell below that of a lawyer with ordinary training and skill in the criminal law, and second, that this defective performance contributed in some way to this conviction." (footnote omitted)); *Brown v. State*, 601 P.2d 221, 234 (Alaska 1979) ("[in *Risher*,] [w]e stated further that a defend-

ant must show that the conduct of counsel has contributed to the conviction before reversal is required.").

Our decisions have likewise uniformly recognized that the accused bears the burden of proof. *See, e.g., Jackson*, 750 P.2d at 824 ("Although the federal and Alaska tests ... are similar, the defendant has a lesser burden of showing prejudice under the Alaska test."); *Strehl v. State*, 722 P.2d 226, 227 n. 1 (Alaska App.1986); *Resek v. State*, 715 P.2d 1188, 1191 (Alaska App. 1986); *Figueroa v. State*, 689 P.2d 512, 513 (Alaska App.1984); *Arnold v. State*, 685 P.2d 1261, 1264 (Alaska App.1984); *Barry v. State*, 675 P.2d 1292, 1295 (Alaska App.1984); *Springer v. State*, 666 P.2d 431, 435 (Alaska App.1983).

that potential witnesses would actually have given favorable testimony, or that additional cross-examination would have weakened the state's case. To satisfy the prejudice prong, Jones was required to allege and prove what admissible evidence would have resulted from a pretrial investigation or independent testing, what would have been said by potential witnesses who were not called, and what answers would likely have been elicited by a proposed but unpursued line of cross-examination.

The requirement that the accused make such a showing has been uniformly enforced not only in Alaska, but in other jurisdictions as well. *See, e.g., United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016–17 (7th Cir.1987); *United States v. DeCoster*, 624 F.2d at 211; *Matthews v. United States*, 518 F.2d 1245, 1246–47 (7th Cir.1975); *State v. Goswick*, 142 Ariz. 582, 691 P.2d 673, 676–77 (1984); *State v. Henricks*, 206 Mont. 469, 672 P.2d 20, 24 (1983); *Campbell v. State*, 728 P.2d 628, 630 (Wyo.1986); *Drapeau v. State*, 103 Idaho 612, 651 P.2d 546 (App.1982).

In the present case, Jones' post-conviction relief application almost completely failed to address the prejudice prong of the *Risher* standard. Except in the vaguest and most conclusory terms, Jones neglected to allege or establish any facts showing prejudice. As to the failure to investigate and failure to obtain independent testing, Jones merely alleged the abstract possibili-

ty that additional favorable evidence might have been obtained.[8] Jones mistakenly asserted that the existence of this possibility satisfied the requirement of *Risher*'s prejudice prong.

In connection with the failure to cross-examine and otherwise impeach the testimony of F.I. and D.I., the police reports appended to Jones' application do establish apparent prior inconsistent statements, but nothing more. Without additional knowledge of the circumstances surrounding the apparent inconsistent statements, and without any explanation of the reasons for the inconsistencies, it is simply impossible to predict whether the failure to call the attention of the jury to these inconsistencies might have resulted in any actual prejudice to Jones.

■■■ In the absence of evidence establishing that trial counsel's failure to investigate, to secure independent testing, or to cross-examine or otherwise impeach the state's witnesses resulted in the loss of favorable evidence, any conclusion that Jones was prejudiced by these omissions is wholly speculative. On the current record, a finding of prejudice under the *Risher* standard cannot be supported.

In conclusion, we hold that the trial court erred in finding ineffective assistance of counsel and in vacating Jones' conviction on that ground.[9] Our conclusion necessi-

---

8. In his reply to the state's opposition below, Jones did attach an affidavit of counsel indicating that the Office of Public Advocacy made perfunctory but unsuccessful efforts to determine the availability of some of the potential witnesses who had not been contacted. The affidavit does not, in our view, establish that a diligent and thorough search for the witnesses was conducted, and it contains nothing to indicate that such a search, had it been conducted by Jones' trial counsel prior to trial, would have been more successful. Moreover, even assuming that potential witnesses who were previously available to Jones' trial counsel are now unavailable, it is at best questionable on the present record whether this fact would excuse Jones' failure to establish that those witnesses would have been capable of providing exculpatory evidence of some material value to the defense. As the supreme court held in *Merrill v. State*, 457 P.2d 231 (Alaska 1969):

> If the record of a post-conviction hearing is silent with regard to an issue and the witnesses are unable to remember, the state has not failed to substantiate its case; to the contrary, the prisoner has failed in his collateral attack on the judgment of conviction.

*Id.* at 234.

9. Under Alaska Criminal Rule 33, the superior court has broad discretion, apart from any question of ineffective assistance of counsel, to grant a new trial when it concludes that the jury's verdict is against the weight of the evidence. *See Dorman v. State*, 622 P.2d 448, 454 (Alaska 1981); *Amidon v. State*, 565 P.2d 1248, 1262 (Alaska 1977); *Maloney v. State*, 667 P.2d 1258, 1267–68 (Alaska App.1983). Here, Jones did not move for a new trial on the ground that his conviction was against the weight of the evidence, and the superior court did not purport to address this issue. Nothing in our opinion is meant to restrict the court's authority to order a new trial under Criminal Rule 33, and our con-

tates a reversal of the superior court's order. The case must be remanded for further proceedings. We readily acknowledge that at least some aspects of Jones' claim raise troubling questions concerning the actions of his trial counsel, particularly the apparent failure of counsel to pursue avenues of cross-examination that, on the surface, seem potentially significant. These issues, however, must be decided by following the orderly process established in Criminal Rule 35.1 and by a correct application of the *Risher* standard. The initial burden of making a *prima facie* showing as to both prongs of the *Risher* standard belongs to Jones. Accordingly, on remand, the superior court should begin by providing Jones an opportunity to file an amended application that meets the procedural requirements of Rule 35.1 and the substantive requirements of the *Risher* standard.

The superior court's order setting aside the conviction is VACATED, and this case is REMANDED for further proceedings.

clusion that the court erred in ordering a new trial based on ineffective assistance of counsel does not suggest that the court would have erred in ordering a new trial had it found Jones' verdict to be against the weight of the evidence.