NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| EMILY B., ) | |
| ) | Supreme Court No. S-17180 |
| Appellant, ) | |
| ) | Superior Court No. 3KN-16-00028 CN |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, ) | |
| OFFICE OF CHILDREN'S SERVICES, ) | No. 1731 – July 3, 2019 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: J. Adam Bartlett, Anchorage, for Appellant. Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.    INTRODUCTION

A mother who had earlier informed the superior court that she intended to consent to her child's adoption failed to appear at trial to contest the termination of her parental rights. Her attorney, assuming that the mother still intended to consent to adoption, agreed to an abbreviated proceeding and put on no defense. The superior court

---

\*    Entered under Alaska Appellate Rule 214.

terminated the mother's parental rights after finding that she had abandoned her daughter by failing to participate in her case plan.

On appeal, the mother contends that her counsel was ineffective for failing to ask for a continuance or to vigorously defend against termination in the absence of recent communication from her client. But we conclude that, in the circumstances of this case, a reasonable attorney could have assumed that the mother still intended to consent to adoption and therefore would not have resisted termination. We further conclude that the mother has not shown that she was prejudiced by her attorney's decisions. Because ineffective assistance of counsel is not demonstrated on the record before us, we affirm the superior court's termination order.

## II.     FACTS AND PROCEEDINGS

### A.     Factual Background

Emily B. gave birth to her daughter Alison[1] in February 2016.[2] OCS was involved from the time of Alison's birth because of Emily's admission to her doctor that she had used heroin and other drugs during her pregnancy.

Emily began using methamphetamine at age 14 and heroin at 17, and she continued to use these drugs and cannabis regularly, including while pregnant. In December 2015, knowing she was pregnant, Emily went to a hospital for help with her drug use. The doctor prescribed Suboxone to try to minimize Emily's use of illegal drugs during the remainder of the pregnancy and referred her to Kenai MediCenter for continued care.

---

[1]     We use pseudonyms to protect the family members' privacy.

[2]     Larry L., Alison's father, voluntarily relinquished his parental rights and is not a party to this appeal.

After Alison was born, OCS instituted a safety plan providing that Emily's mother would supervise Alison, who was not to be left alone with either parent. In March 2016 Emily reported to Kenai MediCenter that she was breastfeeding. Although she denied taking any drugs other than the prescribed Suboxone, an oral swab tested positive for methamphetamine and THC. OCS petitioned for emergency custody of Alison, and Kenai MediCenter discharged Emily from its program a week later for violating her pledge not to use illegal drugs.

The superior court held a probable cause hearing in May 2016 and an adjudication hearing in November, finding Alison to be a child in need of aid under AS 47.10.011(9) (neglect) and (10) (parental substance abuse). OCS created a case plan, but Emily did not follow it. She refused to sign releases of information that would allow OCS to monitor her progress. She did not complete the recommended treatment or parenting classes. OCS learned that she had completed a substance abuse assessment with Dena'ina Wellness Center in March 2016, when she was diagnosed with post-traumatic stress disorder, opioid dependence, amphetamine dependence, and cannabis abuse. But Emily stopped participating in the required urinalysis (UA) testing after an April 2016 result was positive for heroin, and Dena'ina discharged her from its program that August due to non-participation.

Following a brief stint with a foster parent, Alison was placed in the home of her paternal grandmother. Emily's visits were irregular and short, and OCS had trouble maintaining contact with her. By June 2017 Emily had moved to Washington, though she did not give OCS any new contact information. Her active drug use continued, and she was homeless. In August 2017 Washington child protection services informed OCS that Emily had given birth to a son; Washington took custody of the child after he tested positive for illegal drugs. In September 2017 Emily entered a substance abuse treatment center in Spokane. After nearly two weeks of in-patient detox, she was

discharged to a six-month residential treatment program at "Karen's House," where she maintained sobriety until December 2017; she then left without notice and was "discharged against staff advice." According to OCS, Emily did not show up for the UAs required by her Washington case plan from February through April 2018 and appeared to have relapsed. At one point during this period, Alison's grandmother took her to Washington for ten days to visit with Emily's new baby — Alison's brother — but Emily did not use the opportunity to visit with Alison despite attempts to arrange it.

## B. Relevant Judicial Proceedings

Emily attended Alison's March 2018 permanency hearing telephonically. Emily's attorney informed the court that she had just spoken with her client, who "does want to sign a consent" to Alison's adoption by her paternal grandmother. Alison's father had signed a consent to adoption and was excused from further proceedings. When the court, answering questions about procedure from Emily's mother, explained that "the information that's in front of me is that the parties are thinking about adoption," Emily volunteered: "I do want to consent to adopt." The parties agreed to have the court set a termination trial for May 14 "just in case."

Emily did not appear on the day set for trial and did not call in. OCS was prepared to proceed on an offer of proof consisting of five exhibits and the anticipated testimony of an OCS caseworker. The court asked Emily's trial counsel whether she was willing to proceed on OCS's offer of proof or would prefer "to do more to try to reach [Emily] now." The attorney replied,

> Since roughly February, [Emily] has made it pretty clear that her intention was to sign an offer of proof [sic]. And we made some pretty significant efforts to try to organize that given that she's out of state. I'm not sure what happened on the Washington end. It just didn't really happen. So my last instruction or direction from my client is she wanted the grandmother to adopt [Alison]. . . . But in . . . the

circumstances, I'm okay with the offer of proof and admission of these exhibits, given that they're all certified for today's purposes. . . . I called [Emily] last week. She called me back late Friday, and then I tried again this morning, and her phone went right to voicemail. So I believe she's aware of the hearing. I'm not really sure that a[n] additional delay is going to change anything. And given that she did want [Alison] adopted, I think it's probably appropriate.

OCS explained its five exhibits: four had been admitted at the adjudication trial and the fifth was Emily's record from the Spokane treatment center.[3] The guardian ad litem made a statement that Alison "has absolutely no attachment to [Emily] and hasn't even seen her for months, [and that] [Alison's] doing great and really does need to have permanency with her grandmother." OCS had come to the hearing with a proposed order in hand; the court said it would review the exhibits and the proposed order but would wait to sign the order until Emily's counsel had the chance to review it and decide "whether she ha[d] any objections to specific findings."

Emily's counsel submitted no objections, and in July 2018, about two months after trial, the court signed the written order terminating Emily's parental rights. The court ordered termination based on the State's offer of proof and the testimony from the 2016 probable cause and adjudication hearings. The court found that Emily had "failed to participate in a suitable plan or program designed to reunite the parent with the child[]," which constituted abandonment under AS 47.10.013(4), and made all other findings necessary for termination. Emily appeals, arguing ineffective assistance of counsel.

---

[3]     The four previously admitted exhibits were Emily's hospital records from December 2015, her 2016 MediCenter record, the OCS case plan, and Dena'ina Wellness Center records.

## III.  STANDARD OF REVIEW

Whether the right to effective assistance of counsel has been violated is a question of law we consider de novo.[4]

## IV.  DISCUSSION

### Emily Has Not Demonstrated That She Was Denied Effective Assistance Of Counsel.

Emily's sole issue on appeal centers on her counsel's performance at the termination trial.[5]  "A parent has a due process right to effective assistance of counsel in a termination of parental rights proceeding."[6]  We use a two-prong test to address ineffective assistance of counsel claims; both prongs must be satisfied.[7]  "Under the first prong, the litigant must show that her attorney's performance was below a level that any reasonably competent attorney would provide."[8]  "Under the second prong, the litigant must demonstrate that counsel's improved performance would have affected the outcome of the case."[9]  Emily's argument fails under both prongs.

---

[4]     *Stanley B. v. State, Div. of Family & Youth Servs.*, 93 P.3d 403, 408-09 (Alaska 2004).

[5]     We have recognized that ineffective assistance of counsel claims in termination of parental rights cases may be raised for the first time on appeal. *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1266-67 (Alaska 2014).

[6]     *Stanley B.*, 93 P.3d at 408-09.

[7]     *David S. v. State, Dep't of Health & Soc. Servs.*, 270 P.3d 767, 784-86 (Alaska 2012).

[8]     *Chloe W.*, 336 P.3d at 1265.

[9]     *Id.*

### 1. Emily's attorney's performance was not below the level any reasonably competent attorney would provide.

The first prong of the ineffective-assistance test presents a low bar. The "question [is] whether counsel's performance fell below minimally acceptable standards."[10] In analyzing this question, we "must apply a strong presumption of competence."[11] This presumption is buttressed by a "further presumption that trial counsel's actions were motivated by sound tactical considerations"; it is the appellant's burden to rebut the presumption "that, under the circumstances, the challenged action might be considered sound trial strategy."[12] "[R]easonable tactical decisions are virtually immune from subsequent challenge even if, in hindsight, better approaches could have been taken."[13]

Emily argues that her attorney's conduct at the termination trial fails to meet even this minimal standard because her attorney was completely passive: the attorney "did not file a trial brief, . . . make an opening [or closing] argument, . . . call any witnesses, . . . [or] cross-examine any witnesses[,] and [she] agreed to allow the State to proceed by an offer of proof." Emily argues that when she failed to call in for the trial, her attorney had a duty to either request a continuance to determine her position or vigorously defend Emily in her absence. OCS responds that Emily's counsel made reasonable tactical decisions under the pressures of trial that are not open to later challenge.

---

[10] *David* S., 270 P.3d at 786.

[11] *Id.* at 784 (quoting *State v. Jones*, 759 P.2d 558, 569 (Alaska App. 1988)).

[12] *Id.* (quoting *Jones*, 759 P.2d at 569).

[13] *Chloe W.*, 336 P.3d at 1265 (quoting *Chloe O. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 850, 858-59 (Alaska 2013)).

We analyze the attorney's conduct in the specific circumstances of the case.[14] At the March 29 permanency hearing, about six weeks before trial, Emily unequivocally stated that she intended to consent to adoption (after her attorney had made the same representation to the court). Her most recent instructions to her attorney were the same. She had exchanged phone calls with her attorney over the week before trial, apparently without leaving any substantive messages. Having participated in the hearing at which the trial was scheduled, Emily was presumably aware of its date and purpose; yet she did not inform her attorney of any change of heart, nor does she now claim that she attempted unsuccessfully to call into court.

Emily argues that her earlier instructions to counsel and her earlier in-court statement were irrelevant in light of her failure to submit a written consent to adoption;[15] she argues that this "indicated that she wanted a contested hearing." But different conclusions may be drawn from the failure to sign a written consent. Emily's inaction was not unusual in the context of the case. She was often disengaged and out of contact; indeed, her failure to follow through on her case plan formed the basis of the court's finding of abandonment. Reasonable counsel could infer that Emily did not sign a consent to adoption because she believed her earlier statement of intent was sufficient,

---

[14] *Jones*, 759 P.2d at 569 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." (alteration in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984))).

[15] A petition to adopt a minor may not be granted absent the written consent of the mother, *see* AS 25.23.040(a)(1), but a parent's consent is not required if the parent "has abandoned a child for a period of at least six months," *see* AS 25.23.050(a)(1), or if the parent's rights have been voluntarily relinquished or involuntarily terminated, *see* AS 25.23.050(a)(4), (5).

and that she believed she no longer needed to participate in distant court proceedings to which she had been paying only sporadic attention anyway.

We do not dispute that Emily's trial counsel would have acted reasonably had she asked that trial be continued until she could confirm that Emily had not changed her mind about adoption. But under the circumstances, we cannot say that "any competent attorney" would have chosen that path. We conclude that Emily has not overcome the "strong presumption of competence" necessary to establish the first prong of an ineffective-assistance claim.

### 2. Emily has not shown that an improved performance by her attorney would have affected the case's outcome.

Nor is the second prong of the ineffective-assistance test met. Emily argues that because her attorney was completely passive, "her interests were not represented" and she "did not have a voice in the trial court's termination decision"; therefore she must have been prejudiced because she cannot have "reasonable confidence . . . in the outcome of the proceedings." This conclusory argument is insufficient to satisfy the second prong of the ineffective-assistance test. As OCS points out, Emily does not actually challenge any of the evidence presented by OCS or any of the factual findings on which the court based its termination decision. And there is no showing that such a challenge could succeed; Emily's counsel had previously tested most of OCS's offer of proof through cross-examination or objection in earlier proceedings.[16]

Confidence in the fairness of the trial's outcome is important, but our focus in an ineffective-assistance inquiry is on the impact the attorney's performance has on

---

[16] OCS's offer of proof included prior testimony and four previously admitted exhibits. Emily's trial counsel had cross-examined the OCS witnesses during the probable cause and adjudication hearings and challenged the admissibility of exhibits during those hearings.

the trial's outcome, not its impact on the client's confidence in that outcome. Like the appellant in *David S. v. State, Department of Health & Social Services, Office of Children's Services*, Emily has " 'fail[ed] to specify what additional, relevant evidence would have been provided' had counsel been more effective . . . [or] how [s]he thinks the trial would have been different if h[er] counsel had taken a different approach."[17] Without a showing "that counsel's improved performance would have affected the outcome of the case," Emily's argument fails to satisfy the second prong of the ineffective-assistance test.[18] We conclude that Emily has not demonstrated ineffective assistance of counsel on the record before us.

## V.    CONCLUSION

We AFFIRM the superior court's order terminating Emily's parental rights.

---

[17]    270 P.3d 767, 786 (Alaska 2012) (alteration in original) (quoting *In re M.B.*, 647 A.2d 1001, 1005 (Vt. 1994)).

[18]    *Chloe W.*, 336 P.3d at 1265.