John Daniel BANGS, Appellant,

v.

STATE of Alaska, Appellee.

No. 5956.

Court of Appeals of Alaska.

May 20, 1983.

William B. Oberly, Lynch, Farney & Crosby, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

John Daniel Bangs was convicted, following a jury trial, of the first-degree murder of Michael Mangione. Superior Court Judge Victor D. Carlson sentenced Bangs to a maximum term of ninety-nine years' imprisonment. Bangs now appeals, challenging his conviction on a number of grounds and arguing that his sentence is excessive. We affirm.

Bangs' initial contention is that his indictment should have been dismissed because he was deprived of his right to an impartial grand jury. On August 22, 1980, the state obtained an indictment against Bangs for the murder of Michael Mangione. Earlier that day, the grand jury had been presented with evidence of Bangs' involvement in a shootout with members of an Anchorage motorcycle club. The shootout was unrelated to the Mangione killing, and evidence of the shootout resulted in an indictment charging Bangs with two counts of assault in the first degree. On appeal, Bangs claims that it was improper for the state to seek an indictment against him for the Mangione murder from the same grand jury that had heard evidence of his participation in the other crimes.

The question whether a person is entitled, as a matter of constitutional due process, to an unbiased grand jury is one that has not been expressly decided in Alaska. *See Coleman v. State*, 553 P.2d 40, 47 (Alaska 1976). For the purpose of considering Bangs' claim, however, we assume that the right exists. Bangs cites no authority directly supporting the proposition that a grand jury, having once heard and acted upon evidence against a person on one charge, must thereafter be presumed biased and foreclosed from considering other charges against the same person. Instead,

Bangs relies upon cases that discuss the inherent prejudice in forcing a defendant to stand trial for two or more improperly joined criminal charges. *See, e.g., United States v. Marionneaux*, 514 F.2d 1244, 1248 (5th Cir.1975). An analogous situation is presented, according to Bangs, when the state uses a single grand jury to obtain successive indictments against the same person for unrelated crimes.

■ We do not find the analogy suggested by Bangs to be persuasive. Bangs' argument overlooks the separate and distinct functions performed by the grand jury and the petit jury. The grand jury is an accusatorial body charged with the task of determining whether sufficient evidence exists to justify initiating formal criminal proceedings against the accused. The grand jury thus deals with probability of guilt; unlike the petit jury, its function does not involve the ultimate determination of guilt or innocence based on proof beyond a reasonable doubt. *Coleman v. State*, 553 P.2d at 48; *Taggard v. State*, 500 P.2d 238 (Alaska 1972); *Burkholder v. State*, 491 P.2d 754 (Alaska 1971). Thus, while a defendant may suffer fatal prejudice by being forced to stand trial simultaneously on unrelated criminal charges, it does not necessarily follow that successive consideration by a grand jury of separate charges against the same person will give rise to a comparable risk of unfair prejudice.

Another reason exists for rejecting Bangs' proposed analogy between the potential prejudice caused by successive grand jury indictments and prejudice stemming from improper joinder of charges for trial. Unlike the trial situation suggested by Bangs, the evidence of separate crimes in the present case was presented in separate, successive proceedings; evidence of the separate offenses was never combined for consideration by the grand jury in its totality.[1]

---

1. The state also correctly notes an additional consideration that militates against analogizing presentation of successive indictments against the same person to cases involving improper joinder. If the argument advanced by Bangs were accepted, and presentation to a grand jury of successive cases involving the same defendant were barred, the analogy proposed by Bangs would seem logically to require that, whenever improperly joined cases were severed prior to trial, an automatic right to reindictment should also arise. Such a rule has never, to our knowledge, been applied.

Before the grand jury heard evidence on Bangs' murder charge, it had already concluded its deliberations and returned an indictment on the separate charges. Review of the transcript of grand jury proceedings on the murder charge gives no indication that the state attempted to use the evidence previously submitted with respect to the assault charges for the purpose of inflaming the grand jury or altering the manner in which individual jurors assessed the evidence relating to the murder charge. At no time did the prosecution rely on the evidence previously heard by the grand jury in connection with the assault charges, nor was there any suggestion that the grand jury's decision whether to indict for murder should be based upon anything other than the evidence specifically presented by the state in connection with that charge.

The state has called to our attention the only case that apparently deals expressly with a grand jury issue similar to that raised by Bangs. In *State v. Emery,* 131 Ariz. 493, 642 P.2d 838, 851–52 (Ariz.1982), the Arizona Supreme Court considered an argument that presentation to a single grand jury of successive charges involving the same defendant resulted in impermissible jury bias. The Arizona court rejected the argument. In so doing, the court relied in part on the fact that, after presentation to the grand jury of the initial case against the defendant, the prosecutor had polled members of the grand jury to determine whether they could serve impartially in considering evidence on the other charge against the same defendant. Members of the grand jury who indicated that they could not serve impartially were excused. We think that the practice of polling the grand jury to determine the potential existence of bias, as was done in *Emery,* is a desirable one when successive charges involving the same defendant are presented to a single grand jury. We do not, however, believe that such a practice is essential in every case. Indeed, nothing in the court's decision in *Emery* indicates the need for adoption of such a *per se* requirement.

We think it more appropriate to consider each case on its own merits. As we have noted, there is nothing in the record to indicate that the grand jury was encouraged to allow its judgment on the murder charge to be swayed by the evidence previously presented with respect to the separate assault charges. A review of the totality of the grand jury proceedings on the murder charge indicates that the evidence of murder against Bangs was compelling, if not overwhelming. The grand jury heard testimony concerning Bangs' own detailed description of the manner in which he had killed Mangione. A substantial amount of additional, corroborating physical evidence bolstered this testimony. Under these circumstances we conclude that, even if the evidence pertaining to Bangs' separate charges of assault was improperly considered by the grand jury on the murder charge, this evidence would not have materially affected the deliberations of the grand jury. *Oxereok v. State,* 611 P.2d 913, 916 (Alaska 1980); *Gieffels v. State,* 590 P.2d 55, 59 (Alaska 1979); *Mohn v. State,* 584 P.2d 40, 42 (Alaska 1978). We thus conclude that Bangs has failed to demonstrate that successive presentation to the grand jury of separate charges resulted in a violation of his right to an impartial grand jury.

■ Bangs next maintains that a .380 caliber automatic pistol was improperly admitted into evidence at trial. He maintains that, because expert testimony could not conclusively establish that the gun was the murder weapon, it should not have been admitted. Bangs' argument in this regard appears to be grounded on the faulty premise that expert testimony conclusively establishing that the gun was the murder weapon was required. Under Evidence Rule 401, "evidence having any tendency to make the existence of any fact that is of consequence ... more probable or less probable" is relevant; under the provisions of Evidence Rule 402 relevant evidence is, as a general rule, admissible. *See Byrne v. State,* 654 P.2d 795, 796 (Alaska App.1982); *Denison v. Anchorage,* 630 P.2d 1001, 1003 (Alaska App.1981).

Here, there was ample evidence indicating the probative nature of the pistol. The scientific evidence that Mangione was shot with a .380 caliber automatic pistol was undisputed. Uncontroverted evidence also established that the .380 caliber pistol admitted into evidence was owned by Bangs at the time of Mangione's killing, and that, shortly after the killing, Bangs gave the pistol to a friend, who buried it. There was, additionally, specific evidence indicating a link between the pistol and Mangione's murder. The pistol and ammunition found with it, as well as shell casings and bullet fragments recovered at the scene of the murder, were sent for testing to the FBI laboratory. Also sent for testing were .380 caliber shell casings gathered at two locations in Anchorage where Bangs was known to have test fired his pistol. FBI examination could not conclusively establish that Bangs' pistol was the murder weapon. Nevertheless, experts testified that shell casings found at Mangione's residence had been fired from the same weapon that fired at least one shell casing recovered from the scene at each of the locations where Bangs had test fired his pistol. Comparison of autopsy fragments with ammunition that was buried with the pistol also led one expert witness to conclude that the bullet fragments taken from Mangione's body and the bullets that were buried with the pistol could have come from the same box of ammunition. Other witnesses noted a number of microscopic similarities between test fired bullets from the pistol and bullet fragments removed from Mangione's head.

Bangs acknowledges that the .380 caliber pistol was relevant to show that he had access to a weapon that could have been used in the murder and that he therefore had an opportunity to commit the crime. Bangs urges, however, that the probative value of the pistol for this purpose was outweighed by the prejudice of having the gun constantly in the courtroom, in plain view of the jury. A.R.E. 403. Even if the only relevance of the pistol had been to establish opportunity on Bangs' part, we would not find his argument relating to prejudice to be convincing. The trial court had broad discretion to admit relevant evidence, and we could not conclude that the trial court abused its discretion by finding that the probative value of the pistol to establish opportunity outweighed its potential for unfair prejudice.

Significantly, however, the relevance of Bangs' .380 caliber pistol is not restricted to the issue of opportunity. When the totality of the scientific evidence concerning the pistol, shell casings and bullet fragments is considered in conjunction with evidence concerning Bangs' ownership, use and disposal of the weapon, we think that there is an ample evidentiary basis from which the jury could conclude that the pistol admitted at trial was in fact the murder weapon. Accordingly, we find no error in the trial court's decision to allow the pistol to be admitted into evidence.[2]

■ An additional argument advanced by Bangs is that the trial court committed plain error by allowing Bangs, on recross-examination, to respond to a purportedly improper question. On cross-examination by the prosecution, Bangs had admitted that he attempted to suborn a prosecution witness to commit perjury. The prosecution had also established, without objection, that Bangs had unsuccessfully testified in his own behalf several years before, at a trial in which he was charged with (and ultimately convicted of) armed robbery.[3] Upon completion of cross-examination, Bangs was briefly questioned on redirect by his own attorney about his attempt to sub-

---

**2.** Bangs also raises the subsidiary argument that the trial court erred in refusing to grant his motion for mistrial, which was made after expert witnesses presented by the prosecution indicated that scientific tests could not conclusively establish that the .380 caliber pistol owned by Bangs was in fact the murder weapon. Our conclusion that the trial court proper- ly admitted the pistol into evidence disposes of Bangs' mistrial argument.

**3.** Prior to cross-examination on this point, the defense, on direct examination, had established the fact that Bangs was previously convicted of armed robbery.

orn perjury. The prosecutor then opened his recross-examination by asking if in light of his testimony on cross-examination and on redirect, Bangs wanted to reconsider his claim of innocence and admit responsibility for the murder. No objection was voiced to this question.

Bangs replied to the prosecutor's opening question on recross-examination by giving an answer that was not entirely responsive. Essentially, Bangs stated that, when he had previously been tried for armed robbery and testified in his own behalf, he perjured himself; Bangs asserted, however, that the murder trial presented a different situation, and he adamantly insisted that his testimony denying participation in the killing was truthful. There was no motion by the defense to strike this answer as unresponsive.

Bangs now maintains that, even though there was no objection or motion to strike, it was plain error to allow the prosecutor's question to be answered, and it was plain error to allow the answer to that question, once given, to stand. Bangs argues that the prosecutor's question was obviously beyond the scope of redirect examination; he further characterizes the question as being argumentative and calculated to elicit an angry response. Bangs maintains that the answer he gave was devastating to his defense.

Given the lack of any objection at trial, Bangs' claim is entitled to consideration only insofar as it involves plain error. Alaska R.Crim.P. 47(b). It is well settled that, in order to constitute plain error, the error complained of must affect the defendant's substantial rights and be obviously prejudicial. *Brown v. State*, 601 P.2d 221, 225–26 (Alaska 1979); *Sheakley v. State*, 644 P.2d 864, 871 (Alaska App.1982); *Gaona v. State*, 630 P.2d 534, 540 (Alaska App. 1981) (Bryner, C.J., concurring). In the present case, we do not find that the plain error standard has been met.

Initially, it is far from clear that the response given by Bangs to the prosecution's question was "obviously prejudicial." By establishing, at the conclusion of cross-examination, that Bangs testified in his own defense at his prior armed robbery trial, the prosecution created the implication that Bangs had perjured himself on that occasion. In response to this implication, Bangs apparently chose, at the outset of recross-examination, to admit openly his prior perjury, while strenuously asserting the truthfulness of his testimony at the murder trial. Throughout the balance of recross-examination, Bangs continued to insist that his testimony concerning the murder was truthful. Based upon a reading of the totality of Bangs' testimony, we cannot conclude that the approach taken by Bangs—although anifestly a risky one—was obviously prejudicial. To the contrary, Bangs' apparent willingness to be candid about his prior perjury might have been viewed by jurors as having some persuasive force.

To the extent that the prosecution's question that elicited Bangs' remark might have been argumentative and beyond the scope of redirect examination, we cannot conclude that the lack of an objection was not tactical. This is particularly so in light of the fact that earlier, during cross-examination, defense counsel objected to the form of an argumentative question asked by the prosecution. Bangs interrupted the objection of his own counsel, stating that he wanted to answer the prosecutor's questions. He thereupon reiterated his testimony that he did not kill Mangione.

Application of the plain error rule is particularly inappropriate in situations such as this, where the lack of an objection might have been tactical and where the prejudice stemming from alleged error is less than clear. We conclude that Bangs has failed to establish plain error.

Bangs separately asserts that his trial counsel's failure to object to the prosecutor's opening question on recross-examination amounted to incompetence of counsel, requiring reversal. In deciding whether Bangs received adequate representation, we must evaluate the conduct of defense counsel to determine whether his decisions, when viewed in context, fall "within the range of reasonable actions which might

have been taken by an attorney skilled in the criminal law, regardless of the outcome of such decisions." *Risher v. State,* 523 P.2d 421, 424 (Alaska 1974). The standard for reversal based on inadequacy of representation is well settled:

> Before reversal will result, there must first be a finding that counsel's conduct either generally throughout the trial or in one or more specific instances did not conform to the standard of competence which we have enunciated. Secondly, there must be a showing that the lack of competency contributed to the conviction. If the first burden has been met, all that is required additionally is to create a reasonable doubt that the incompetence contributed to the outcome.

*Nielsen v. State,* 623 P.2d 304, 308 (Alaska 1981) (quoting *Risher v. State,* 523 P.2d at 425).

No attempt has been made by Bangs on appeal to establish that his trial counsel's failure to object to the prosecution's questioning on recross-examination was the result of neglect, rather than of strategy. The possibility that the failure to object might have been tactical must be given considerable weight in determining whether an attorney's conduct was reasonable. *Gaona v. State,* 630 P.2d 534, 537–38 (Alaska App.1981). We cannot say that trial counsel's failure to object on this single occasion, when viewed in the context of the entire trial record, was outside the range of reasonable actions which might have been taken by an attorney skilled in the criminal law. *Risher v. State,* 523 P.2d at 424; *Gaona v. State,* 630 P.2d at 538. This is especially true in light of the fact that Bangs' principal claim of prejudice is directed not toward the question, but toward his own answer, which was admittedly unresponsive and could not, we believe, have been reasonably anticipated by his attorney. We hold that Bangs was not deprived of effective assistance of counsel at trial.

The final challenge raised by Bangs is to his sentence. Bangs maintains that the maximum, ninety-nine year term he re-ceived is too severe. He argues that the sentence reflects the trial court's failure to give adequate consideration to the sentencing goal of rehabilitation.

Bangs' conviction in this case was his second felony conviction. He was previously convicted of armed robbery; for that offense, he had been given a sentence of seven years, with four years suspended. Bangs had spent more than two years in jail on the robbery conviction, and, at the time of Mangione's murder, he had been released on parole for less than six weeks.

The sentencing record establishes that, prior to his conviction for armed robbery, Bangs had substantial problems with alcohol and drug abuse and that his former wife believed he had a problem with violence. Almost immediately after being released on parole, Bangs again began to use substantial quantities of drugs and alcohol, and he purchased the pistol with which the murder was committed. All of these actions were violations of his parole conditions, and purchase of the gun constituted a felony offense. During the short span of time between his release and his commission of the murder in this case, Bangs assisted in harboring a friend who was a fugitive, and he became at least peripherally involved in a number of thefts from Mangione, for whom his friend worked.

The murder committed by Bangs ranks among the most heinous and senseless of killings. Bangs shot his victim in the head at virtually point blank range five times. His only apparent motive was to prevent Mangione from providing police with information about a series of thefts committed by Bangs' friend. Within several days of the murder, Bangs became involved in a shootout with members of a motorcycle club; Bangs shot and seriously injured two people.

Despite the fact that psychiatric evaluations indicate that Bangs is intelligent and suffers from no mental illness, Bangs appears to have virtually no insight to the inappropriateness of his behavior and no desire to conform his conduct to societal norms. He has never shown any significant

remorse either for his prior armed robbery or for the present offense. Bangs does not consider himself to be a violent person, nor does he believe that he has a problem with alcohol or drug abuse. There is nothing in the record to indicate that any particular form of therapy or rehabilitation would be of benefit to Bangs.

The task of determining the priority in relationship of various sentencing goals is primarily that of the trial judge. *Asitonia v. State,* 508 P.2d 1023, 1026 (Alaska 1973). Given the totality of the information concerning Bangs' background, the manner in which he committed the present offense, and his almost total lack of insight, we cannot conclude that Judge Carlson was clearly mistaken in deciding that Bangs is an extremely dangerous offender, for whom the maximum sentence of ninety-nine years is appropriate.

The conviction and sentence are AFFIRMED.