Randall W. MASSEY, Appellant,

v.

STATE of Alaska, Appellee.

Nos. A–1817, A–1899.

Court of Appeals of Alaska.

March 17, 1989.

Brant McGee, Public Advocate, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Randall W. Massey was convicted, following a jury trial, of two counts of first-degree robbery and two counts of kidnapping stemming from the armed robbery of the Willow Trading Post on January 28,

1985. Massey was also convicted, after entering a plea of no contest, of one count of first-degree robbery for his participation in the armed robbery of Blackie's Bar in Wasilla, on January 13, 1985. Sentencing in the two cases was conducted at a single hearing. Superior Court Judge Beverly W. Cutler sentenced Massey to partly concurrent and partly consecutive sentences totaling thirty-five years with five years suspended. Massey now appeals his convictions in both cases and his aggregate sentence. We affirm.

## FACTS

On January 13, 1985, Massey and an accomplice robbed Blackie's Bar on the Knik–Goose Bay Road in Wasilla. Massey initiated the robbery when he emerged from the restroom of the bar with Band–Aids under his eyes, shot a hole in the ceiling, and made the owner and two customers lie down on the floor. Massey's partner tied up the owner and the customers. During the robbery, Massey bragged about being a "hit man" who had committed a number of murders. The robbers stole almost $3,000 from the bar and also stole money from a customer. Band–Aid wrappers with Massey's fingerprints were later found in the restroom.

Two weeks later, on January 28, 1985, shortly before midnight, Massey and two other men robbed the Willow Trading Post, a bar and liquor store. Helen Tucker and Stella Hughton, the owners, were preparing to close for the night. Hughton was standing by the cash register when Massey pointed a gun at her and told her to get her partner. She went into the hallway and called Tucker, who was in another room counting money. Massey forced both women, at gunpoint, to lie face down on the floor. An accomplice, Harlan Olhausen, tied the women up. Each woman had her hands tied to her feet behind her back, with a rope around her neck.

While the women were being tied up, Massey asked them where the money was and threatened to kill them if they did not follow his instructions. Massey reinforced his threats by telling them that he had just gotten out of jail and that he had killed three people.

The women directed the men to a cashbox in a hall closet. Massey found $850 in the cashbox and demanded more money. The women then told him that Sunday's receipts were on the kitchen counter. After getting that money, Massey demanded the women's purses and went upstairs to find Hughton's purse. The robbers took a total of about $1,800 and some miscellaneous personal property.

During the robbery, Hughton and Tucker saw only two people, the gunman and the man who tied them up. However, both heard the cash registers ringing in the adjoining liquor store and bar during the robbery and were therefore convinced that there was a third robber.

The two women remained tied up until 9:00 the next morning, when an employee found them and cut them loose. As a result of being bound for nine hours, both women suffered a loss of feeling in their hands for a period of three to eight months after the robbery.

Immediately after they were released, the women contacted the police. Several state troopers investigated the scene and interviewed Hughton and Tucker. Both identified the robbers as three men who had spent time at the bar the previous two nights and who were the only non-local people at the bar the night of the robbery. Tucker described the man who tied them up as a short, stocky, older man. This description fit Harlan Olhausen, who subsequently pled guilty. The other two men were described as young and blond, one with long hair and the other with short hair. Randall Massey had short blond hair at the time of the crime; the third accomplice, Christopher Van Bebber, had long blond hair.

Tucker told one of the investigating troopers that the gunman was blond but that she did not recall whether he had long hair or short hair. At some later point Tucker apparently told another trooper that the man with the long blond hair had the gun and that she had not seen the

short-haired blond during the robbery. At trial, Tucker testified that she did not remember the length of the gunman's hair. However, she was sure the gunman was the short-haired blond because the gunman was well-groomed, whereas the long-haired blond had been "really sloppy and dirty." Tucker made an in-court identification of Massey as the gunman.

On the morning after the robbery, Hughton described the gunman as the long-haired blond. However, at trial, Hughton made an in-court identification of Massey as the gunman, stating that she recognized him because of his hair.

During the course of the investigation, both women were shown photo lineups that included pictures of Massey. Tucker identified Massey as one of the robbers. Hughton was unable to make a positive identification from the photo lineup.

Several pieces of evidence were collected from the scene of the crime. Massey's fingerprints were later found on a sheet of yellow paper listing Friday's and Saturday's receipts at the Willow Trading Post. The paper, which had originally been kept with the money in the cashbox underneath the stairway, had been found at the top of the stairs leading to Tucker and Hughton's living quarters.

### DENIAL OF MOTION TO DISMISS

■ Massey first claims that his indictments should have been dismissed. Although Massey was charged for the Willow and Wasilla robberies in two separate indictments, the charges were presented to the grand jury at the same time. Prior to trial, Massey moved to dismiss the indict-

ments, arguing that presenting two cases to the same grand jury at the same time violated his due process right to an unbiased grand jury. *See Chief v. State*, 718 P.2d 475, 477 (Alaska App.1986). Judge Cutler denied the motion.[1]

■ Although the two offenses were charged in two separate indictments, they could properly have been joined as separate counts in a single indictment. Alaska Criminal Rule 8(a) specifically permits the joinder of multiple offenses in a single indictment when the offenses "are of the same or similar character." Massey has cited no authority to suggest that Criminal Rule 8(a) violates due process, and we are aware of no such authority. Since the charges against Massey could properly have been joined in a single indictment, it is difficult to see how contemporaneous presentation of the same charges in separate indictments to the same grand jury could amount to a constitutional violation.

■ Even assuming a single indictment was inappropriate, Massey has failed to meet his burden of proving prejudice. *See Chief v. State*, 718 P.2d at 477. He must demonstrate that the evidence from one case "materially affected" the grand jury's deliberation on the other case. *Bangs v. State*, 663 P.2d 981, 983 (Alaska App.1983). The applicable standard in determining whether improperly admitted evidence "materially affected" the grand jury's deliberations is whether other evidence, properly presented to the grand jury, was sufficient to warrant indictment. *Id.*

Here, overwhelming evidence was presented to the grand jury against Massey on each charge. The Wasilla robbery was

---

1. For the sake of simplicity, we discuss the issue as if it is properly raised in both of Massey's cases. The issue is preserved for appeal, however, only in connection with the Willow robbery. Massey initially raised this issue in his motion to dismiss the indictment for the Wasilla robbery. He subsequently entered a plea of no contest to that charge without reserving his right to appeal the trial court's denial of the motion. *See Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). The plea of no contest operates as a waiver of the issue. *Id.* at 1255. Massey did not specifically move to dismiss the indictment for the Willow robbery on this ground in his pretrial motion. The state contends that his failure to raise the issue below in connection with the Willow robbery precludes Massey from raising the issue on appeal. However, Massey moved to dismiss the Willow indictment on other grounds. Massey's challenges to both indictments were dealt with in a single hearing. The joinder issue clearly related to both offenses. Judge Cutler considered and ruled on the issue in relation to both offenses. Under these circumstances, it would appear that Massey should not be precluded from raising the issue in relation to the Willow offense on appeal.

established by the eyewitness testimony of Thomas Schiefer, the principal victim. He had identified Massey in a photo lineup. Fingerprint evidence found on the Band-Aid wrappers at the scene of the crime corroborated Schiefer's identification of Massey. The Willow robbery was established by the eyewitness testimony of both victims. One of them, Tucker, identified Massey in a photo lineup. Fingerprint evidence also established Massey's identity in this case.

Because there was abundant direct evidence of each offense, any improper effect on the grand jury's deliberation in these cases would not have been material.

## TRIAL ERRORS—THE WILLOW ROBBERY

Massey next argues that the trial court erred in admitting evidence pertaining to Christopher Van Bebber's and Harlan Olhausen's participation in the Willow robbery.

In his opening statement, the prosecutor said, without objection:

> You're going to hear from Harlan [Olhausen] and Christopher Van Bebber. They're going to be witnesses. They're going to both tell you that they've been convicted of this thing. Both have been granted immunity at this stage the evidence will show. They have a right not to testify but under the laws of the State of Alaska, they will testify because they are forced to testify at this stage because they have been convicted.

The state later introduced evidence of Van Bebber's conviction through the testimony of Alaska State Trooper Huntsman and mentioned it three times during closing argument.

Both Van Bebber and Olhausen were called as witnesses for the state. Olhausen freely testified to his own participation in the crime and directly implicated Massey. At the outset of his testimony, he acknowledged, without objection, that he had been convicted but not yet sentenced for his part in the robbery.

Before Van Bebber took the stand, his attorney informed the court that his client would refuse to testify. Judge Cutler expressly asked Massey's trial counsel whether he felt that Massey would be prejudiced if Van Bebber took the stand and refused to testify. Massey's attorney specifically indicated that he had no objection to Van Bebber's taking the stand and refusing to testify in the jury's presence.

Van Bebber was sworn as a witness. Without objection, the prosecutor asked him a series of leading questions about the robbery, several of which implied that Van Bebber had previously made statements implicating Massey. Van Bebber refused to answer any of the questions, despite direct orders from Judge Cutler.

At the state's request, and over Massey's objection, Judge Cutler proceeded to find Van Bebber unavailable as a witness. Based on this finding of unavailability, the judge allowed the state to present limited portions of a confession that Van Bebber had previously made to the police. The confession was redacted to eliminate references to Massey and was admitted on the theory that it was a statement against penal interest. *See* A.R.E. 804(b)(3).

Massey now raises four related claims of error: 1) that the trial court erred in permitting the state to introduce evidence that Van Bebber was convicted for his role in the Willow offense; 2) that the trial court erred in failing to instruct the jury that evidence concerning Olhausen's conviction could only be used to assess Olhausen's credibility; 3) that Massey's sixth amendment right to confrontation was violated by the prosecution's continued questioning of Van Bebber; and 4) that Massey's right to confrontation was violated by the introduction of portions of Van Bebber's confession.

Massey raises all but the last claim for the first time on appeal. At trial, Massey's counsel did not object to the state's references to Van Bebber's conviction. Nor did Massey's counsel request that the jury be instructed that Olhausen's conviction could not be considered as substantive evidence of Massey's guilt. Moreover, despite his

knowledge that Van Bebber would refuse to answer questions, Massey's counsel affirmatively approved Van Bebber's being called to the stand and questioned before the jury. We must consider these claims under the plain error standard. Alaska R.Crim.P. 47(b).

■ A plain error is one that is substantially prejudicial and so obvious that it would be apparent to a competent judge or attorney without objection. Because this court will find plain error only when the error would have been obvious to a competent attorney, a finding of plain error is tantamount to a finding of ineffective assistance of counsel. *Potts v. State,* 712 P.2d 385, 394 n. 11 (Alaska App.1985). Hence, unless the record precludes the possibility that counsel's actions may have been tactical, a finding of plain error is rarely appropriate. *Id. See also Bangs v. State,* 663 P.2d 981, 985 (Alaska App.1983).

■ In this case, the record indicates that Massey's trial counsel acquiesced in, and at times encouraged, the introduction of the challenged evidence. Counsel did so in the face of overwhelming evidence of his client's guilt, and his reasons were apparently tactical. The primary defense strategy in this case was evidently to suggest to the jury that Olhausen and Van Bebber were the two robbers actually seen by Hughton and Tucker. Each victim acknowledged that she had actually seen only two men during the robbery. Both identified Olhausen as the man who had tied them up. Although, at trial, both identified Massey as the gunman, their in-court identifications were capable of impeachment.

Faced with a strong case against Massey and lacking any plausible line of defense other than to attempt to create a reasonable doubt as to the participation of a third robber, Massey's trial counsel may well have perceived it as being to Massey's advantage to make it clear to the jury that two men had already been caught and convicted by the state. In this connection, counsel may also have thought it to his advantage to maximize the jury's exposure to Van Bebber and to allow the jury to see that, although Van Bebber was an immun-

ized state witness, he declined to inculpate Massey under oath.

A competent attorney must, of course, pursue sound tactics. And when trial counsel's failure to object to inadmissible and substantially prejudicial evidence stems from reliance on a tactic that is patently unsound, that failure to object will not preclude a finding of plain error. *See, e.g., State v. Jones,* 759 P.2d 558, 569–70 (Alaska App.1988). On appeal, Massey marshals various arguments in support of the position that any tactical reason his trial counsel might have had for failing to object to the challenged evidence would have been unsound. However, Massey has not claimed that his trial counsel provided ineffective assistance. Trial counsel has never been called upon to explain his decisions; the record is silent in this regard. On this record it seems possible that trial counsel's actions were based on tactical decisions that were not plainly unsound. Under these circumstances, in the absence of evidence to the contrary, a strong presumption applies that counsel's actions were based on sound tactical choices. *State v. Jones,* 759 P.2d at 569. The current record does not support the conclusion that this presumption has been overcome. Accordingly, we find no plain error.

Massey did object to the admission of Van Bebber's confession as a violation of his sixth amendment confrontation rights. The trial court ruled that Van Bebber's statements about his own involvement in the robbery were admissible under A.R.E. 804(b)(3) as statements against penal interest, provided that the statements were redacted to eliminate any reference to Massey's involvement in the robbery. A strong argument can be made that admission of the challenged statements was improper, even when they were redacted. *See Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986) (cautioning against potential confrontation clause violations resulting from overly broad reliance on the statement against penal interest exception for admission of accomplice confessions). *See also Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)

(redacted confession admissible against nontestifying codefendant at a joint trial only if the jury is instructed that it cannot be considered as evidence against non-declarant defendant).

■ Even assuming the challenged evidence was improperly admitted, however, its prejudicial effect was plainly negligible when considered in the context of the overwhelming evidence of Massey's guilt. This evidence included eyewitness identification by both victims, Olhausen's direct testimony against Massey, and Massey's fingerprint from the crime scene. Under the circumstances, any error was harmless beyond a reasonable doubt. *Van Hatten v. State,* 666 P.2d 1047 (Alaska App.1983).

## SENTENCE APPEAL

Massey's final claim is that his sentence is excessive. Massey was subject to sentencing as a third felony offender based on two prior Arkansas convictions for theft and burglary. Judge Cutler sentenced Massey to consecutive presumptive sentences of fifteen years on each of the two robbery convictions, and to twenty years with five years suspended on each of the two kidnapping convictions. The judge imposed the kidnapping sentences to run consecutively to each other, but concurrently with the robbery sentences. Massey's aggregate sentence for the Willow and Wasilla offenses is thus thirty-five years with five years suspended. Judge Cutler further ordered these sentences to run consecutively to Massey's sentence for a robbery in Kenai. That robbery was committed approximately one week before the Willow robbery and one week after the Wasilla robbery. In the Kenai case, Superior Court Judge Charles K. Cranston sentenced Massey separately, imposing a maximum sentence of twenty years for robbery and a concurrent sentence of thirty-five years with thirty years suspended for kidnapping. We affirmed this sentence in *Massey v. State,* Memorandum Opinion and Judgment No. 1345 (Alaska App., March 4, 1987). Massey's total sentence for the three robberies (the Willow robbery, the Wasilla robbery, and the Kenai robbery) was thus seventy years with twenty years suspended.

■ On appeal, Massey does not dispute any of the individual sentences that he received. Instead, he contends that the sentencing court was clearly mistaken in pyramiding consecutive presumptive terms for the robberies. Massey argues that the record does not support Judge Cutler's finding that it was necessary to isolate Massey for a total of fifty years—the total unsuspended period of incarceration that he received.

There is no statutory presumptive term for Massey's most serious offenses, kidnapping. Kidnapping is an unclassified felony, with a maximum sentence of ninety-nine years, AS 12.55.125(b). Massey's aggregate sentence falls far short of the maximum sentence for a single count of kidnapping. Massey was convicted, however, of three counts of kidnapping, stemming from two separate incidents.

Massey was subject to presumptive terms of fifteen years for his robbery convictions. *See* AS 12.55.125(c)(4). In imposing Massey's robbery sentences, Judge Cutler found that the state had proven three aggravating factors by clear and convincing evidence: that Massey was on parole at the time he committed the offenses, that he had a criminal history of similar offenses, and that his conduct in the Wasilla robbery created a risk of imminent physical injury to three or more persons. AS 12.55.155(c)(20), (21), and (6).

Although only thirty years of age when sentenced, Massey clearly belonged in the category of worst offenders. He had accumulated a record that included at least five prior felony convictions. The current offenses were two of three similar armed robberies committed by Massey and a companion within a two-week period. Two of the robberies included acts of kidnapping; all included the use of firearms and involved a high potential for causing death or serious physical injury. The victims of Massey's Willow robbery were in fact found by Judge Cutler to have suffered

injuries bordering on serious physical injury.

Massey has spent a significant portion of his adult life in prison. He shows no remorse for his crimes and has demonstrated no inclination toward rehabilitation.

 At the sentencing hearing, Judge Cutler made an affirmative finding that consecutive sentences were required in order to protect the public.[2] In our view, this finding finds ample support in the sentencing record. Massey's background and his current offenses make his case comparable to *Wortham v. State*, 689 P.2d 1133 (Alaska App.1984). There, we approved a composite sentence of more than fifty years. Massey's composite sentences impose a period of fifty years of unsuspended incarceration. Having independently reviewed the entire sentencing record, we conclude that the sentences imposed below are not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The judgments are AFFIRMED.

---

2. Judge Cutler stated, in relevant part:

There seems to me to be no way around a finding that consecutive sentences are necessary to protect the public. It doesn't appear to me that if you just go do a straight 15 years on this and the sentence imposed by Judge Cranston that the public is adequately protected. Because it appears to me that you have to be isolated in order to protect the public, as it doesn't appear that you're going to change, not even in 15 years. I also think that it's probably necessary to do it to deter other persons, but in terms of the total sentence, 30 years, exceeding the maximum for either one, 20 years, I can only make you serve them consecutive if I find it's necessary to protect the public, and I do find it's necessary for that.... So, your total sentence from this court is 30 years in addition to what Judge Cranston gave you. And I find that it was necessary for this court to make each of these cases—these 2 Palmer cases—consecutive for each other for the reasons stated, and I'll repeat that. I don't think rehabilitation outside the jail is going to take place. I'm not sure it's going to take place in the jail, but it would take a long time, longer than 15 years in my opinion. That isolation for longer than 15 years is necessary to protect the public, and in fact isolation for longer than 20 years at this point seems necessary to protect the public.