**Steven Albert WOLFE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7403.**

Court of Appeals of Alaska.

May 11, 2001.

Rehearing Denied June 1, 2001.

Walter Share, Seattle, and Martin Zeller, Friedman & Brothers, Homer, for Appellant.

Mary S. Pieper, Assistant District Attorney, Dwayne McConnell, District Attorney, Kenai, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

Steven Albert Wolfe, a high school teacher, was convicted of disorderly conduct for shaking a student and pushing him up against a desk. Wolfe appeals his conviction, arguing (1) that there was insufficient evidence to support the jury's verdict, (2) that the jury was misinstructed on an element of the offense, (3) that the trial judge refused to allow Wolfe to present important exculpatory evidence, and (4) that the disorderly conduct statute is unconstitutional because it penalizes a teacher's justifiable use of force to maintain school discipline. Wolfe also argues that he never should have been brought to trial in the first place because the State violated his right to a speedy trial under Criminal Rule 45. For the reasons explained here, we reject each of Wolfe's contentions, and we therefore affirm his conviction.

### Facts of the case

On November 5, 1997, Wolfe was sitting alone in his classroom during a break between classes. Two students, Jason Trygstad and Tisha Kuhns, entered the classroom. They were engaging in horseplay: Trygstad was hitting Kuhns's arm and head-butting Kuhns's shoulder or torso. At some point, Kuhns exclaimed, "Ouch! That hurts!" Wolfe directed Trygstad to leave Kuhns alone. When Trygstad did not immediately stop, Wolfe repeated this command. In response, Trygstad stopped rough-housing with Kuhns and turned to leave. As he walked

out of Wolfe's classroom, Trygstad said, laughingly, "Yeah, leave her alone."

Wolfe did not like the tone of Trygstad's remark; he took it to be disrespectful. Wolfe therefore directed Trygstad to come back into the classroom. When Trygstad re-entered the room, Wolfe strode across the room, grabbed Trygstad by the upper arm, and shook him. According to Trygstad, Wolfe exclaimed, "Young man, young man, that really pisses me off." Wolfe then swung Trygstad around, pushed him up against a desk, and pinned him down on top of the desk. Wolfe pressed Trygstad against the desk so hard that the desk folded up. Some-where between ten and thirty seconds later, Wolfe released Trygstad. After school was recessed for the day, Wolfe contacted Tryg-stad and apologized for what he had done. Later, Wolfe met with Trygstad's father and two school administrators. Wolfe again apol-ogized for his behavior.

Following a police investigation, Wolfe was charged with three misdemeanors: fourth-degree assault, harassment, and disorderly conduct under AS 11.61.110(a)(6)—"reckless-ly creat[ing] a hazardous condition for others by an act which has no legal justification or excuse". A jury acquitted Wolfe of assault and harassment but convicted him of disor-derly conduct.

*Wolfe's speedy trial claim*

Wolfe contends that all charges against him should have been dismissed because he was not brought to trial within the time limits of Alaska's speedy trial rule, Criminal Rule 45. This contention arises out of the trial court's response to Wolfe's motion to continue the trial.

On April 8, 1998, Wolfe filed a motion to delay his trial until after May 14th because his attorney would be out of the country until then. Eight days later (on April 16th), Supe-rior Court Judge Harold M. Brown granted Wolfe's request and rescheduled the trial for June 23rd. Wolfe did not object to this trial date until he arrived in court on the day of trial, ten weeks later. Wolfe then claimed

that Rule 45 had already expired. He re-news that claim on appeal.

Wolfe acknowledges that, under Rule 45(d)(2), the speedy trial "clock" is tolled during "[any] period of delay resulting from an adjournment or continuance granted at the timely request" of the defense. But Wolfe argues that he only asked for a contin-uance until May 14th. Wolfe contends that, because Judge Brown responded to his re-quest by scheduling the trial for June 23rd, the additional 40 days must be charged to the State, not to Wolfe.

 Our examination of the record shows that Wolfe's motion to continue the trial was much more open-ended than he acknowledges. Although Wolfe's motion stated that May 14th would be a preferred trial date, his motion also stated that, "under any conditions, [defense] counsel requests that trial and all other matters pertaining to this case be continued *until after May 14, 1998, as [counsel] will be out of the country until that time*". (Emphasis added)

Thus, the record does not support Wolfe's contention that he never agreed to any date after May 14th. By filing an open-ended request, and by never indicating that he re-fused to consent to the new trial date set by the court, Wolfe effectively consented to the June 23rd trial date. The Alaska Supreme Court faced a similar issue in *Henson v. State*.[1] In *Henson*, the defendant originally requested a continuance of "about two weeks", but the defense attorney "clearly indicated that a longer period of delay ... was acceptable."[2] The supreme court held that, under these circumstances, the entire period up through the rescheduled trial date (not just the suggested two weeks) should be excluded under Rule 45(d)(2).

There is a second reason for rejecting Wolfe's Rule 45 argument. Rule 45(d)(2) excludes all delay "resulting from" a defense request for a continuance of trial. The venue for Wolfe's trial was Homer. Wolfe's trial judge, Judge Brown, resided in Kenai and made only monthly trips to Homer—and he was unavailable to visit Homer during the

---

1. 576 P.2d 1352 (Alaska 1978).

2. *Id.* at 1356.

normally scheduled week in May. As Judge Brown explained to the defense attorney:

*The Court:* When you file a motion for continuance, . . . the court has to re-calendar the case. And you may be available at a certain time, but that does not mean that [the parties] and other counsel are. So any time we depart from [the date] that the case was originally scheduled, you run into complications.

For example, I only come down to Homer once a month. . . . Now, I couldn't have tried this case in May because I attended my daughter's graduation back at Bowdoin College in May. Now, that's not your fault, but it's not my fault either. . . . [T]hat's the reason why [this case] couldn't have been [scheduled for the] May calendar [in Homer]—and it sounds like [that date would] have been a little close, anyway, from your point of view. So, we put [this case] down on the June calendar, and here we are. And I don't think there is a Rule 45 problem under the circumstances.

We agree.

For these two reasons, we conclude that Wolfe's right to a speedy trial under Criminal Rule 45 was not violated.

*Sufficiency of the evidence to support the jury's verdict*

■ Wolfe contends that the evidence presented at his trial was not sufficient to support his conviction for disorderly conduct. To resolve this claim, we must assess the evidence in the light most favorable to upholding the verdict and then decide whether, viewing the evidence in this light, reasonable jurors could have been convinced of Wolfe's guilt beyond a reasonable doubt.[3]

Wolfe was charged with disorderly conduct under subsection (a)(6) of the statute—"recklessly creat[ing] a hazardous condition for others by an act that has no legal justification or excuse". Wolfe argues that, even if he grabbed Trygstad, shook him, and pinned him to the desk, these actions never placed

Trygstad in danger of physical injury, and thus Wolfe never created a "hazardous condition" for Trygstad.

Alternatively, Wolfe points out that even if Trygstad was conceivably placed in physical danger by Wolfe's conduct (so that Wolfe's actions created a "hazardous condition"), the State was also required to prove that Wolfe acted "recklessly" with respect to this danger—that Wolfe "[was] aware of and consciously disregard[ed] a substantial and unjustifiable risk" that his actions would create a hazardous condition for Trygstad.[4] Wolfe argues that any possibility of physical harm created by his actions was so slight or so remote that, even assuming he was aware of a slight or remote risk of harm to Trygstad, the State failed to prove that his disregard of this slight or remote possibility "constitute[d] a gross deviation from the standard of conduct that a reasonable person would observe in the [same] situation".[5]

■ Whether a defendant's actions created a risk of physical injury to others, and whether the defendant recklessly disregarded that risk, are questions that ultimately depend on the facts of the particular case. Here, the evidence showed that Wolfe held Trygstad, shook him, and then pinned him against the top of a desk so hard that the desk folded up. Wolfe, who was both a sports coach and a wrestler himself, weighed 210 pounds and was a strong man. From these facts, reasonable jurors could have concluded that Wolfe's actions posed a risk of physical harm to Trygstad, that Wolfe was aware of this risk, and that, under the circumstances, Wolfe's disregard of this risk was a substantial and unjustifiable departure from the standard of conduct that a reasonable person would have observed in that situation. The evidence was therefore sufficient to support the jury's decision to convict Wolfe of disorderly conduct.

*The jury instruction defining "hazardous condition"*

The offense of disorderly conduct under AS 11.61.110(a)(6) requires proof that the

---

**3.** *See Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981); *Silvernail v. State,* 777 P.2d 1169, 1172 (Alaska App.1989).

**4.** AS 11.81.900(a)(3) (defining "recklessly").

**5.** *Id.* (defining "substantial and unjustifiable risk").

defendant's conduct created a "hazardous condition". The term "hazardous condition" is not defined in Title 11, but Judge Brown concluded that the jurors needed an explanation of this term. He instructed the jury that a "hazardous condition" is a condition "which is dangerous or involves the risk of injury or damage".

Wolfe's attorney did not object to this instruction at the time, but Wolfe now claims that this instruction constituted plain error— that it was manifestly wrong, so wrong that any competent judge or attorney should have recognized the error and corrected it.[6] The error in the instruction, Wolfe asserts, is that it defines "hazardous" too broadly.

Wolfe argues that the offense of disorderly conduct requires proof, not just of a "risk of injury", but of a substantial and imminent risk of injury. Wolfe also argues that "hazardous condition" includes only risks to people—that a risk of "damage" to property (for instance, a risk that the desk might have been damaged) is not sufficient to establish the offense of disorderly conduct.

■ Wolfe cites no legal authority for these propositions. He refers us to the definition of "hazardous substance" found in AS 46.03.826 (in the chapter of the statutes dealing with the prevention and abatement of environmental hazards), but he offers no reason to believe that the legislature intended the same definition of "hazardous" to govern the definition of disorderly conduct.

Wolfe's failure to furnish legal authority for his interpretation of the statutory language is, by itself, essentially fatal to his argument that the trial judge's instruction was "plain error". As explained above, a litigant who asserts plain error must show that the error was so plain that any competent judge or attorney would have seen it. Judge Brown's instruction in this case tracks the dictionary definition of "hazardous".[7] Therefore, in the absence of some reason to believe that the legislature was not using this word in its normal sense, we must reject Wolfe's contention of "plain error".

We also reject Wolfe's argument for a second reason. A litigant who alleges "plain error" must show that the error manifestly prejudiced the fairness of the proceedings.[8] Here, we are convinced that the arguable flaws in the jury instruction did not affect the jury's decision.

■ As noted above, Wolfe contends that the definition of "hazardous condition" should not have included a reference to "damage" because the jury might have believed that a risk of damage to property (as opposed to persons) was sufficient to establish the *actus reus* of disorderly conduct. From the legislative commentary to AS 11.61.110(a)(6), it does appear that the legislature was thinking only of potential injury to persons when it enacted this subsection of the disorderly conduct statute.[9] However, this limitation is written into the statute itself. The offense is committed when a defendant "recklessly creates a hazardous condition *for others* ...".

Wolfe's jury was given a definition of the offense that tracked this statutory language. Thus, even if there was a potential ambiguity in the instruction on "hazardous condition", the instructions as a whole correctly limited the offense to conduct that created a risk of harm to people.[10] Moreover, we note that the final arguments of the parties focused on

---

6. *See Massey v. State,* 771 P.2d 448, 453 (Alaska App.1989); *Carman v. State,* 658 P.2d 131, 137 (Alaska App.1983); *Marrone v. State,* 653 P.2d 672, 675–681 (Alaska App.1982).

7. *See Webster's New World Dictionary of American English* (Third College Edition, 1988), p. 620.

8. *See Potts v. State,* 712 P.2d 385, 394 n. 11 (Alaska App.1985); *Marrone v. State,* 653 P.2d 672, 675–681 (Alaska App.1982).

9. That commentary, which is found in 1978 Senate Journal, Supp. No. 47 (June 12), p. 96, reads:

Paragraph (6) prohibits the reckless creation of "a hazardous condition for others by an act which has no legal justification or excuse." An example of the conduct covered under this provision would include shouting "fire" in a crowded auditorium.

10. *See Wilson v. State,* 967 P.2d 98, 102 (Alaska App.1998) ("the ultimate question is whether, taking the jury instructions as a whole," the jury was correctly apprised of the law governing their decision).

the potential risk of harm to Trygstad; neither attorney suggested that the offense might be proved by the potential risk of damage to the desk.[11]

Wolfe's second attack on the jury instruction defining "hazardous condition" is that it did not include the limitation that the risk of harm to persons must be substantial and imminent. As explained above, Wolfe has failed to present any authority to support a conclusion that the legislature intended the phrase to be limited in this fashion. But even assuming that the legislature did intend to limit the scope of disorderly conduct to the creation of a substantial and imminent risk to others, we conclude that any arguable defect in the challenged instruction had no effect on the jury's decision.

With regard to Wolfe's argument that "hazardous condition" must be confined to substantial risks, this concept was conveyed to the jury by the instructions dealing with the State's obligation to prove that Wolfe acted "recklessly" in creating the hazardous condition. As defined in AS 11.81.900(a)(3), a person acts "recklessly" with regard to a result (here, the creation of a hazardous condition) if the person "is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur". The statute then defines "substantial and unjustifiable risk" as "[a] risk ... of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation".

Wolfe's jury was instructed on the meaning of "recklessly" in accordance with the statute, and Wolfe's attorney focused on the elements of this statutory definition during his summation to the jury. He told the jurors:

> *Defense Attorney:* Now, [the law] requires [that,] at the time [Mr. Wolfe] was acting, ... he must have been aware of the risk. He had to be aware of the risk. It's in the instructions. You'll see that when you come to "recklessly". Mr. Wolfe had to be aware of the risk he was taking....

[And] that risk had to be really substantial. It had to be substantial. This is what the State has to prove beyond a reasonable doubt. This is their burden. The risk also has to be unjustified. [This is] not our burden.... That is the State's burden. And [the State must prove] that his behavior [was] a gross deviation [from the standard of reasonable conduct]. Not just a minor one, not just a moderate one, but a gross one.

Given the jury instruction on "recklessly", and given the handling of this issue during final argument, we conclude that the jury understood that they should not convict Wolfe of disorderly conduct unless they were convinced that his actions created a substantial risk of harm to Trygstad, a risk so substantial that Wolfe's disregard of it constituted a gross departure from a reasonable standard of care.

As to Wolfe's argument that "hazardous condition" must be confined to conditions that pose a risk of imminent harm, we note that, under the circumstances of this case (Wolfe's act of shaking a person and pinning that person down on a desk), any risk of harm was obviously a risk of imminent harm.

For these reasons, we reject Wolfe's contention that the jury instruction defining "hazardous condition" was plain error.

*The claim that the disorderly conduct statute is overbroad because it penalizes justified behavior, and that is unconstitutionally vague because the statute contains no definition of "hazardous condition"*

Wolfe challenges the constitutionality of the disorderly conduct statute—in particular, the constitutionality of the subsection that he was charged with violating, AS 11.61.110(a)(6). Wolfe contends that this statute allows the State to prosecute and punish teachers for using appropriate force to maintain discipline and protect students and staff.

The very wording of the challenged provision rebuts Wolfe's claim. In order to

---

**11.** *See Norris v. State,* 857 P.2d 349, 355 (Alaska App.1993); *O'Brannon v. State,* 812 P.2d 222, 229 (Alaska App.1991) (the parties' arguments can cure defects, ambiguities, or omissions in the jury instructions).

prove Wolfe guilty of disorderly conduct under subsection (a)(6), the State had to prove that Wolfe "recklessly creat[ed] a hazardous condition for others *by an act that ha[d] no legal justification or excuse*". Wolfe's jury was instructed that if they had a reasonable doubt concerning any element of the offense, they were obliged to acquit Wolfe. With particular regard to the possibility that Wolfe's role as a school teacher may have justified his conduct, the jury was further instructed, in words drawn directly from AS 11.81.430(a)(2), that

> [t]he use of force upon another person ... is justified when and to the extent reasonably necessary and appropriate to maintain order, or when the use of force is consistent with the welfare of the students. A teacher may, if authorized by school regulations and the principal of the school, use reasonable and appropriate non-deadly force upon a student.... Unless the State has proven beyond a reasonable doubt [that] the defendant did not act in these circumstances, you should find the defendant not guilty.

We therefore reject Wolfe's contention that the disorderly conduct statute punishes innocent or justified behavior.

■ We also conclude that there is no possibility that the jury convicted Wolfe for engaging in conduct that was justified by his role or his duties as a school teacher. We note that, during their summations, both attorneys explicitly addressed this issue.

The prosecutor contended that Wolfe had assaulted Trygstad "for no good reason"— that Wolfe's use of force was not justified by any purported need to maintain school discipline or to protect Kuhns from sexual harassment. The prosecutor conceded that teachers have a duty "to maintain order—absolutely". But the prosecutor argued that Wolfe's reaction to the situation was completely inappropriate—that Wolfe "got angry ... [and] lost his cool" when Trygstad "didn't react fast enough".

The defense attorney, on the other hand, argued that the situation appeared serious from Wolfe's point of view—that it appeared as if Trygstad was harassing or assaulting a female student, and then, when Wolfe directed Trygstad to stop, the boy seemingly gave Wolfe an impudent reply. Under these circumstances, the defense attorney argued, Wolfe's reaction either was justified or was so close to being justified that the State could not prove that Wolfe acted recklessly.

Thus, the jury was fully and correctly instructed on the issue of justification, and the issue was placed squarely in front of them by the summations of the parties. The jury weighed the evidence and concluded that the State had shown, beyond a reasonable doubt, that Wolfe's conduct had not been justified by his role as a school teacher.

■ With respect to Wolfe's claim that the phrase "hazardous condition" is unconstitutionally vague, we note that "hazardous" is a word of common usage meaning "dangerous" or "perilous".[12] Moreover, the disorderly conduct statute does not use the phrase "hazardous condition" in isolation; rather, the statute requires proof that the defendant created a "hazardous condition to others"— that is, a condition hazardous to other people.

■ Taking our lead from the dictionary and from the legislative commentary to the statute (quoted in footnote 9 above), we construe the phrase "hazardous condition to others" as meaning "a condition posing a risk to the health or physical safety of others". Construed in this fashion, the statute is constitutional. Moreover, as we explained above (when we rejected Wolfe's argument that the trial judge's definition of "hazardous condition" amounted to plain error), this interpretation of the statute was conveyed to the jury through the trial court's instructions and the arguments of the attorneys.

*The claim that Wolfe was prevented from presenting exculpatory evidence concerning the school district's policy on sexual harassment*

At trial, Wolfe's attorney wished to present the testimony of Keith Gephardt, the assistant principal of Homer High School. The

**12.** *See Webster's New World Dictionary of American English* (Third College Edition, 1988), p. 620.

defense attorney wanted to question Gephardt concerning the school district's policy on sexual harassment. According to the defense offer of proof, Gephardt's testimony concerning the school district's policy would tend to show that Wolfe was justified in "reprimand[ing]" Trygstad for a perceived act of sexual harassment.

However, when the defense attorney conducted a *voir dire* examination of Gephardt (outside the presence of the jury) and showed Gephardt a copy of the Kenai Peninsula Borough School District's policy on sexual harassment, Gephardt disclaimed familiarity with the precise provisions of the policy. He stated that he was not sure whether he had ever seen the policy before. Gephardt added, however, that he was reasonably certain that the school district followed the same policy as Homer High School—the policy that sexual harassment was not tolerated.

Gephardt was ultimately asked to read certain passages from the printed policy. These passages confirmed that the school district has taken a stand against sexual harassment. According to the policy, "the Board shall not tolerate the sexual harassment of any student by any other student, or [by] any district employee", and "[a]ny student or any employee who is found guilty of sexual harassment shall be subject to disciplinary actions."

However, the policy apparently does not deal with a school teacher's right or obligation to use force upon students or employees to prevent or stop sexual harassment. At least, there was no discussion of such a provision during Gephardt's *voir dire* examination.

Based on the results of this *voir dire*, Judge Brown concluded that Wolfe had failed to show that the school district policy was particularly relevant to the issues being litigated at trial. Judge Brown noted that the policy merely stated the obvious: "[I]n this day and age, there isn't anybody in this courtroom—including the ladies and gentlemen on the jury—who doesn't know that sexual harassment is not going to be tolerated." The judge further noted that the policy was silent on the point for which Wolfe was offering it. That is, the policy did not specify

or describe a teacher's potential right or duty to use force to prevent or interrupt sexual harassment. Judge Brown found that the policy did not address "what teachers are expected to do, or how they are expected to do it, with regards to preventing sexual harassment." The judge therefore ruled that evidence of the contents of the policy would be more confusing than probative, and he refused to allow Wolfe to present Gephardt's testimony concerning the policy.

On appeal, Wolfe asserts that Judge Brown refused to allow him to present evidence of a school district policy "[that] directed Mr. Wolfe to prevent and discipline [students] for sexual harassment". This is a mischaracterization of the record. As just explained, the policy (or, at least, the portion of the policy that appears in the record) does not direct school teachers to do anything. Rather, the policy states that students or employees "who [are] found guilty of sexual harassment shall be subject to disciplinary actions." (Emphasis added) As Judge Brown correctly noted, this language does not direct or authorize teachers to forcibly intervene when they believe that sexual harassment is occurring. Rather, this language describes the consequences that may ensue when, following an adjudicatory process, a student or employee is found to have committed sexual harassment.

Based on this record, Judge Brown could properly conclude that the school district policy on sexual harassment did not add anything of appreciable value to the jury's consideration of the issue being litigated: whether Wolfe's use of force on Trygstad might be justified by Wolfe's duty to maintain school discipline and to protect students from assault or sexual harassment. Judge Brown therefore did not abuse his discretion when he declined to allow Wolfe's attorney to call Assistant Principal Gephardt to the stand to describe this policy.

*Conclusion*

For the reasons explained here, the judgement of the district court is AFFIRMED.