Lance D. LINTON, Sr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–7603.

Court of Appeals of Alaska.

July 20, 2001.

Lance D. Linton, Sr., in propria persona, Florence, AZ, for Appellant.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Lance D. Linton is pursuing a petition for post-conviction relief, alleging that he received incompetent representation from his trial attorney. When a defendant makes such a claim, Alaska law normally requires the defendant to obtain an affidavit from their trial attorney (an affidavit discussing the various allegations of incompetence). If such an affidavit can not be obtained, the defendant must explain the efforts that were made to procure the affidavit and why these efforts proved unsuccessful.

In Linton's case, a dispute developed as to whether Linton had tried to obtain an affidavit from his trial attorney. We directed the superior court to hold an evidentiary hearing to resolve this issue. We told the superior court that if Linton had not asked his attorney to supply an affidavit, the court could properly dismiss Linton's petition for post-conviction relief; if, on the other hand, Linton had attempted to obtain the required affidavit but was unsuccessful, then the court should allow the post-conviction relief litigation to go forward.

The facts turned out to be more complicated than we anticipated. The superior court found that Linton may have made some ineffective efforts to obtain the required affidavit from his attorney, but when these efforts failed, Linton did not diligently pursue the matter. Based on these findings, the superior court dismissed Linton's petition for post-conviction relief. Linton now appeals the superior court's decision.

We agree with the superior court that Linton's attempts to obtain his trial attorney's affidavit were flawed. Nevertheless, it is clear from the record that Linton understood the necessity of obtaining the trial attorney's affidavit and that he made some effort to obtain it. Linton drafted a letter to his trial attorney in early September 1996, detailing his various allegations of incompetent representation and asking the attorney to respond. Linton sent informational copies of this letter to the superior court and the Fairbanks District Attorney's Office. Linton's trial attorney never received the letter, but the superior court and the district attorney did receive their copies of the letter in mid-September 1996.

Linton is representing himself, and he is confined in prison. Moreover, the superior court possessed a contemporaneous copy of the letter that Linton wished to deliver to his attorney. Given these facts, we conclude

that when the dispute arose concerning Linton's failure to supply his attorney's affidavit, the superior court should have resolved this issue by providing the trial attorney with a copy of Linton's letter and asking the attorney to respond.

*The underlying procedural history of this case*

In 1992, Lance D. Linton, Sr., was convicted of murdering his wife. This court affirmed Linton's conviction in *Linton v. State.*[1] In 1997, Linton filed a petition for post-conviction relief. In his petition, Linton asserted that his trial attorney had represented him incompetently in various ways. Linton supported this petition with his own affidavit, but he failed to include an affidavit from his trial attorney.

Under *Steffensen v. State*[2] and *State v. Jones*[3], Linton was obliged to furnish the superior court with either (1) an affidavit from his trial attorney addressing these various claims of incompetence or (2) an explanation of why it was not possible to obtain such an affidavit. But Linton's petition included neither the affidavit nor the explanation. Based on this omission, the State asked the superior court to dismiss Linton's petition for failure to state a *prima facie* case.

In his opposition to the State's motion, Linton asserted that he had, in fact, requested an affidavit from his trial attorney, but the attorney had ignored Linton's request. The State responded by filing an affidavit from Linton's trial attorney. The trial attorney stated that Linton had never asked him to submit an affidavit; the attorney further stated that, had Linton asked him to prepare an affidavit, he certainly would have.

Based upon these pleadings, the superior court granted the State's motion and dismissed Linton's petition for post-conviction relief. The court ruled that Linton had failed to present a *prima facie* case of attorney incompetence.

In *Linton v. State (II)*[4], we concluded that the superior court should not have dismissed Linton's petition without allowing Linton to present evidence on this disputed issue.[5] We therefore remanded Linton's case to the superior court so a hearing could be held to resolve this factual dispute. We told the superior court:

> If, following this hearing, the superior court concludes that Linton did not ask his attorney to supply an affidavit (in other words, that Linton is now misrepresenting the facts), then the court may properly dismiss Linton's petition for post-conviction relief. On the other hand, if the superior court concludes that Linton attempted to obtain an affidavit from his trial attorney but was unsuccessful, then the court should allow the post-conviction relief litigation to go forward.

*Linton (II),* slip opinion at 3.

*The evidence presented at the remand hearing, and the superior court's ruling*

The superior court held the mandated hearing on August 10, 1999. Three witnesses testified: Linton, Nelson Traverso (Linton's trial attorney), and John Franich (the supervising attorney for the Fairbanks branch of the Office of Public Advocacy).

Linton testified that on September 4, 1996 he sent a letter to Traverso, asking him to prepare an affidavit to be filed in conjunction with Linton's petition for post-conviction relief. Linton sent informational copies of this letter to the superior court and the Fairbanks District Attorney's Office.

According to Linton, his letter to Traverso was returned because it was incorrectly addressed. The letter came back to Linton with a yellow sticker indicating the correct address for the Office of Public Advocacy, but Linton did not resend the letter to Traverso. Instead (Linton testified), he prepared a new, stamped envelope addressed to the Office of Public Advocacy (at its correct ad-

---

1. 880 P.2d 123 (Alaska App.1994), *affirmed on rehrg.,* 901 P.2d 439 (Alaska App.1995).

2. 837 P.2d 1123, 1126–27 (Alaska App.1992).

3. 759 P.2d 558, 570 (Alaska App.1988).

4. Alaska App. Memorandum Opinion No. 4000, 1999 WL 91828 (February 24, 1999).

5. *See id.* at 2–3.

dress), he placed his original letter to Traverso inside this new envelope, and then he sent the whole package to the superior court (or possibly the district attorney's office), with a cover memo asking the court to send the enclosed stamped envelope to the Office of Public Advocacy.

When the prosecutor cross-examined Linton, the prosecutor asked Linton why he had failed to mention this series of events before. Linton conceded that he had never, until that very day, explained to anyone about the returned letter or his subsequent act of forwarding that letter to the court (or the district attorney). Linton explained his silence by asserting that he felt no need to take any further action, and no need to call the returned letter to anyone's attention, because, "as far as [he] was concerned, Attorney Traverso had received the letter." Linton contended that even if the original letter never reached Traverso, Linton's obligation was discharged because he had sent a copy of the letter to the court and to the Fairbanks District Attorney—whom Linton repeatedly referred to as Traverso's "advocate". ·

Traverso himself testified that he never saw Linton's 1996 letter until the letter became an issue in 1998. John Franich, the supervising attorney at the Office of Public Advocacy, testified that nothing in Linton's file suggested that OPA ever received Linton's original letter to Traverso. The OPA staff first saw a copy of Linton's letter to Traverso on March 24, 1997, when Linton served several papers on OPA in connection with a federal civil rights suit that he had filed against OPA and Traverso personally. This was six days after the superior court dismissed Linton's post-conviction relief petition for failure to state a case.

After hearing all of this evidence, Superior Court Judge Niesje J. Steinkruger concluded that Linton had failed to prove that he acted diligently to obtain an affidavit from Traverso. She found that there was no evidence to corroborate Linton's claim that his original letter to Traverso was returned to him by the post office, or that Linton then forwarded the returned letter to the court (with a cover memo asking the court to mail the letter to Traverso). Judge Steinkruger noted that

the court's file contained no indication that the court ever received such a mailing from Linton.

Judge Steinkruger also noted that, in all of the pleadings that Linton filed prior to the August 1999 remand hearing, Linton had never before offered the story he was now presenting—in particular, his assertions that his September 1996 letter to Traverso was returned because of an incorrect address, and that thereafter he forwarded the returned letter to the superior court in a stamped, correctly addressed envelope, along with a memo instructing the court to mail the letter to Traverso.

Judge Steinkruger further found that although Linton contemporaneously sent copies of the letter to the court and to the district attorney's office, these copies were obviously just that—copies of a letter addressed (and presumably mailed) to Traverso, and they were not accompanied by any request to forward the letter to Traverso. That is, the receipt of these copies did not put the court or the district attorney's office on notice that Linton had failed to send the original letter to Traverso, or that Linton might be relying on the court or the district attorney to forward a copy to Traverso. Thus, the judge concluded, Linton's actions were not "reasonably calculated to achieve the required result"—i.e., not reasonably calculated to obtain the required affidavit from Traverso.

Judge Steinkruger ruled that any attempt Linton may have made to send a letter to Traverso was insufficient to satisfy Linton's burden of seeking an affidavit from his trial attorney—and that, for this reason, Linton's petition for post-conviction relief was subject to summary dismissal for failure to state a *prima facie* case.

*Our analysis*

Judge Steinkruger's ruling comprises two parts: a finding of fact and a ruling of law.

■ Judge Steinkruger's finding of fact deals with the credibility of Linton's testimony at the evidentiary hearing—in particular, Linton's assertions that the post office returned his original letter to Traverso because

it was incorrectly addressed, and that Linton then placed the returned letter in a stamped and properly addressed envelope, forwarded this letter to the superior court, and instructed the court to convey the letter to Traverso. Judge Steinkruger found that Linton's story was not credible, primarily because there was nothing to corroborate Linton's story and because he offered this story for the first time at the evidentiary hearing. The record supports Judge Steinkruger's finding.

In the pleadings that Linton filed prior to the August 1999 evidentiary hearing—most notably, in Linton's "Pro Se Memorandum of Law in [Opposition to] State's Motion to Dismiss Post Conviction Relief Application" (dated February 20, 1997), page 3; and in his "Memorandum of Law in Support of Motion for Hearing on [the] Ineffective Counsel Claim" (dated March 9, 1999), pages 3–4— Linton described the steps he had taken to obtain Traverso's affidavit and he tried to explain why he had not yet obtained it. In neither of these pleadings did Linton mention that the post office had returned his letter to Traverso, or that Linton had then forwarded the returned letter to the superior court. Moreover, neither the superior court nor the district attorney's office ever received the forwarded letter that Linton claimed to have sent. Given this record, Judge Steinkruger was not clearly erroneous when she found Linton's August 1999 version of events to be unbelievable.[6]

■ However, putting aside Linton's story of the returned letter, it is undisputed that in mid-September 1996 both the superior court and the district attorney's office received copies of a letter addressed to Traverso from Linton—a letter in which Linton asked Traverso to prepare an affidavit responding to various allegations of ineffective assistance. Linton has consistently maintained (*i.e.,* both in his pre-August 1999 pleadings and at the evidentiary hearing) that he sent this letter to Traverso in September 1996 and that, even if Traverso never personally received this letter, Linton nevertheless satisfied his obligation to try to obtain Traverso's affidavit. Linton particularly relied on the fact

that the superior court and the district attorney's office received contemporaneous copies of this letter. He argued that the district attorney's office "represented" Traverso, and thus his act of serving a copy on the district attorney should be deemed service on Traverso. Alternatively, Linton argued that the superior court itself was obliged to notify Traverso of Linton's request for an affidavit.

At the close of the evidentiary hearing, Judge Steinkruger rejected Linton's legal contentions; that is, she rejected Linton's arguments that the district attorney's and/or the superior court's receipt of a copy of his letter to Traverso should be deemed equivalent to a direct request to Traverso to prepare the required affidavit. Having rejected Linton's legal arguments, Judge Steinkruger then ruled that Linton had not acted diligently to obtain Traverso's affidavit and that Linton should therefore be deemed to have submitted his petition for post-conviction relief without seeking the required affidavit. In other words, Judge Steinkruger ruled that Linton's petition should be dismissed because he had not done enough to obtain Traverso's affidavit.

We agree with Judge Steinkruger that, as a legal matter, the district attorney's office does not represent Traverso in this litigation, and thus the district attorney's receipt of its copy of the letter did not constitute service on Traverso. We also agree that when the superior court received its copy of the letter in mid-September 1996, the court had no duty to forward its copy to Traverso—because the court could reasonably assume that Linton had sent the original directly to Traverso. But later events should have prompted the court to take affirmative action to ensure that Linton's letter was transmitted to Traverso.

By February 1997, it was obvious that something had gone awry: either Traverso was refusing to respond to Linton's request for an affidavit, or Linton's request had somehow never been communicated to Traverso. In a pleading dated February 20, 1997, Linton told the court:

---

6. *See D.H. v. Department of Health and Social Services,* 929 P.2d 650, 653 n. 8 (Alaska 1996) (a trial court's findings of fact are to be upheld unless they are "clearly erroneous").

Before [Judge Steinkruger] should be the trial counsel Attorney Traverso's Affidavit. *State v. Jones,* 759 P.2d 558 (Alaska App. 1988). Attorney Traverso has already verbally come forward to the Fairbanks District Attorney on the letter dated September 4, 1996, from this applicant requesting an Affidavit under *State v. Jones,* 759 P.2d 558 (Alaska App.1988). This applicant has not as yet received the requested Affidavit [from] trial counsel Traverso. *Pro se* [applicants] can only request said Affidavit from their ineffective trial counsel in a timely manner and indicate so in the record. This has been done (Exhibit A) [a copy of Linton's September 4, 1996 letter to Traverso], although [District] Attorney Davis in his twisted pleadings would attempt to make it appear differently. This is also a moral error on [District] Attorney Harry Davis's record for accepting Attorney Traverso's testimony verbally and not requiring the State OPA Attorney [*i.e.,* Traverso] to complete the requested Affidavit, and dispatching it to this applicant and [the] Trial Judge.

"Pro Se Memorandum of Law in [Opposition to] State's Motion to Dismiss Post Conviction Relief Application", page 3.

Although Linton's language is a little hard to follow, and even though his pleading is laced with aspersions on the ethics of opposing counsel, Linton is basically saying that (1) he knew that *State v. Jones* required him to submit an affidavit from his trial attorney, (2) he in fact asked Traverso to prepare an affidavit, (3) he believed that Traverso had received this request (the letter of September 4, 1996) because it appeared that Traverso had already discussed the case with the district attorney's office, but nevertheless (4) Traverso had failed to prepare the requested affidavit so far.

Linton was representing himself, and he was in prison; his ability to communicate with Traverso was limited, and he could not personally deliver the letter to Traverso. Linton knew that he was obligated to obtain Traverso's affidavit, he had drafted a letter asking Traverso to respond to various allegations of ineffective representation, and the superior court was in possession of a copy of this letter. Based on the wording of Linton's February 1997 pleading, Linton clearly believed that Traverso had received his request for the needed affidavit and was ignoring it. Under these circumstances, when it became apparent that Traverso had never received Linton's letter, the superior court should have taken matters in hand by delivering a copy of the letter to Traverso and asking Traverso to prepare a responding affidavit.

It may be true, as Judge Steinkruger found, that Linton reacted unreasonably when the State (and Traverso himself) asserted that Traverso had never received Linton's September 1996 letter. In response, Linton could simply have asked the court or the district attorney's office to forward a copy of the letter to Traverso. Instead, Linton accused everyone of violating their legal and ethical duties.

■ Linton's various pleadings show him to be distrustful of the State and of his former attorney. His writing is sometimes prolix and difficult to follow. And, as Judge Steinkruger found, Linton may have misrepresented the facts at the August 1999 evidentiary hearing. But a defendant is generally entitled to only one petition for post-conviction relief [7], and the superior court should normally not dismiss the petition simply because the defendant is a difficult or unreasonable litigant.

Here, both the court and the district attorney's office were in possession of copies of a letter that Linton apparently wanted Traverso to respond to—a letter requesting the affidavit that Linton knew he was obligated to produce in support of his petition for post-conviction relief. When it became clear that Linton's letter had not reached Traverso, the fairest solution was for the court to make sure that a copy was delivered to Traverso so that the post-conviction relief process could go forward. This is what we direct the superior court to do now.

*Conclusion*

The judgement of the superior court is REVERSED. Linton's petition for post-con-

7. *See* AS 12.72.020(a)(5)-(6).

viction relief is reinstated. The superior court shall serve a copy of Linton's September 4, 1996 letter on attorney Nelson Traverso and shall request that Traverso prepare an affidavit responding to Linton's allegations of ineffective assistance. This case shall then go forward under the procedures governing post-conviction relief litigation.